143 N.J. Super. 275 (1976)
362 A.2d 1279
CITY COUNCIL OF THE CITY OF ELIZABETH, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
MICHAEL FUMERO, DONALD MANNIX, POLICEMEN'S BENEVOLENT ASSOCIATION, ELIZABETH LOCAL NO. 4, A BRANCH OF THE NEW JERSEY STATE POLICEMEN'S BENEVOLENT ASSOCIATION, UNDERWRITERS AT LLOYD'S, AN INSURANCE COMPANY AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY, AND SPIRITO, SPAGNOLI & THURING, A PROFESSIONAL CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 16, 1976.
*279 Mr. Frank P. Trocino, City Attorney, for plaintiff City Council of Elizabeth (Mr. Raymond S. Londa, First Assistant City Attorney, on the brief).
Messrs. McDonough, Murray & Korn, attorneys for defendant Michael Fumero (Mr. Peter L. Korn on the brief).
Messrs. Spagnoli & Thuring, attorneys for defendant Donald Mannix (Mr. Richard M. Thuring on the brief).
Messrs. Gorrin & Ironson, attorneys for defendant Edward William Cheshire (improperly impleaded as Underwriters at Lloyd's, an insurance company authorized to do business in the State of New Jersey) (Mr. Gerald M. Gorrin on the brief).
DI BUONO, A.J.S.C.
Jorge De Jesus instituted an action in the Federal District Court against two police officers and the City of Elizabeth by whom the police officers were employed demanding both consequential and punitive damages; his wife joined in the suit seeking a derivative per quod recovery.
The couple advanced three separate theories of liability, the first being predicated upon 42 U.S.C.A. § 1983, alleging that Jorge De Jesus was deprived of his constitutional *280 rights by reason of an illegal arrest, unnecessary force in making the arrest, assault and battery and false imprisonment. The second theory of liability is directed against the City of Elizabeth and seeks to hold the city liable for the alleged wrongdoings of its police officers. The third basis of liability is predicated upon the doctrine of "pendant" jurisdiction, contending that the conduct of the police officers constituted an assault and battery at common law.
In the action presently before this court the City of Elizabeth (hereinafter city), seeks a declaratory judgment determining the nature and extent of its duty to provide a defense for its employee police officers and whether it would be obligated to indemnify the individual defendants named in the federal suit for any judgment which may be recovered against them. Specifically, the city seeks an interpretation of the duties and responsibilities imposed upon it by N.J.S.A. 40A:14-155, and in light thereof, the effect of a collective bargaining agreement between the city and the Elizabeth Patrolmen's Benevolent Association (PBA). Additionally, the city seeks a determination of the applicability of an insurance policy and the responsibilities of Underwriters At Lloyds, an insurance company authorized to do business in the State of New Jersey (hereinafter insurance company), from whom the city purchased said policy pursuant to a collective bargaining agreement between the city and the PBA. More particularly, the city seeks clarification as to the nature and extent of the coverage provided in said policy as it pertains to the action instituted by Mr. and Mrs. De Jesus in the federal court, which action finds its genesis in incidents arising out of the alleged false arrest by police officers.

I
Initially, the duties and responsibilities of the city, vis-a-vis the police officers, must be examined. The relevant statute, N.J.S.A. 40A:14-155, provides:
*281 Whenever a member or officer of a municipal police department or force is a defendant in any action or legal proceeding arising out of or incidental to the performance of his duties, the governing body of the municipality shall provide said member or officer with necessary means for the defense of such action or proceeding, but not for his defense in a disciplinary proceeding instituted against him by the municipality or in a criminal proceeding instituted as a result of a complaint on behalf of the municipality. If any such disciplinary or criminal proceeding instituted by or on complaint of the municipality shall be dismissed or finally determined in favor of the member or officer, he shall be reimbursed for the expense of his defense.
The collective bargaining agreement between the city and the PBA, which predated the institution of De Jesus' suit in federal court, incorporated this statute verbatim. Immediately following that recitation the agreement contained the following pertinent provision:
The City agrees to furnish all necessary legal advice and representation in the defense of civil charges and allegations brought in any legal action against a member of the bargaining unit covered by this agreement, and shall undertake to defend or arrange for the defense of members of the bargaining unit. In the event of a judgment against a member of the bargaining unit arising out of or incidental to the performance of his duty, the City agrees to pay for said judgment or arrange for the payment of said judgment.
Paragraph 4 of the same agreement, in an attempt to limit the applicability of N.J.S.A. 40A:14-155, states:
It is specifically understood between the parties to this Agreement that a judgment of punitive damages which may be recovered against a member of the bargaining unit is specifically exempt from the requirement of representation or payment by the City, and the employee or employees shall be responsible in an individual capacity for the payment of any judgment of punitive damages which may be rendered against them by a court of competent jurisdiction.
Pursuant to this agreement the city purchased a "false arrest" policy from defendant insurance company. The policy named the members of the Elizabeth police force as beneficiaries.
*282 Upon being served with the summons and complaint in the federal suit, the police officers retained private counsel, who attempted to negotiate with the city on the subject of payment of reasonable attorney's fees. The city took the position that the collective bargaining agreement set forth a specific manner of implementing the provisions of N.J.S.A. 40A:14-155, and that their statutory obligations were discharged by the procurement of the "false arrest" policy. The police officers asserted that the city's obligation to pay their legal expenses was absolute, notwithstanding any contrary provisions in the collective bargaining agreement. Because of this difference of interpretation no agreement concerning the payment of legal fees has been reached.
It must first be determined whether N.J.S.A. 40A:14-155 was intended to include within its purview the defense of claims for punitive damages, as well as claims for compensatory damages. When attempting to interpret a statute, it is necessary to ascertain the intent of the Legislature in promulgating such a provision. Highlands v. Davis, 124 N.J. Super. 217 (Law Div. 1973). In the cited case the court examined the predecessor statutes to the current version of N.J.S.A. 40A:14-155. The first version, N.J.S.A. 40:11-19 provided:
Where a member of any police or fire department is made a defendant in any suit or other legal proceeding arising out of the performance of police or fire duty or out of any incident arising in the line of such duty, the officer, board, or body in control of such police or fire department shall provide all necessary legal aid necessary for the defense of such suit or other legal proceeding; provided, this shall not apply to any disciplinary or criminal proceeding instituted against such policeman or fireman by the municipality in which he is employed. [at 225]
Thereafter, that statute was replaced by N.J.S.A. 40A:14-155, which provided:
Whenever a member or officer of a municipal police department or force is sued for damages arising from or incidental to a performance of his duties, the governing body of the municipality shall provide *283 said member or officer with necessary means for the defense of such suit, but not for his defense in a disciplinary or criminal proceeding instituted against him by the municipality. [at 226]
Comparing the current statute to its predecessors, the sole qualifying factor contained in each version is that the conduct for which a defense is to be provided must arise out of, or be incidental to, the performance of defendants' duties. It is also significant to note that the initial version of this statute was applicable to "any suit or other legal proceeding arising out of the performance of * * * duty" (emphasis supplied). That statute's successor then employed the more restrictive language: Whenever [a police officer] is sued for damages arising from or incidental to a performance of his duties" (emphasis supplied). Whatever question this restrictive language may have raised concerning the scope of coverage, the fact that the current version of N.J.S.A. 40A:14-155 has deleted this language and has reinserted the more encompassing language initially employed evinces a legislative intent to provide defendant with a complete legal defense regardless of the nature of the remedy being sought by plaintiff.
It is significant that in each of these versions the Legislature specifically excluded certain types of proceedings from the purview of the statute. Proceedings which seek punitive damages are not included in these exclusions.
Based on the foregoing analysis, the court can find no indication whatsoever that the Legislature intended the statute to apply only to compensatory damage claims. On the contrary, because the Legislature did see fit to explicitly exclude certain proceedings from the purview of the representation requirement, a proper interpretation requires the municipality to provide the means for a defense in all other situations. Moreover, the Legislature could not have been so unaware that actions of this type normally include claims for punitive damages. If such claims were meant to be without the contemplation of the statute, the Legislature would have explicitly so provided.
*284 The next line of inquiry is whether the restriction placed upon the statute by the collective bargaining agreement is valid. The general principle in this area is that a contract is unenforceable as being contrary to public policy if it violates a statute promulgated by the Legislature. Saffore v. Atlantic Casualty Ins. Co., 21 N.J. 300 (1956). In the case at bar N.J.S.A. 40A:14-155 has been explicitly incorporated into the collective bargaining agreement. The statute has been interpreted so that representation on a punitive damage claim falls within its contemplation. The controlling principle was stated in Saffore:
A specific provision integrated into the contract by force of a statute, as a matter of public policy must be interpreted and given effect in accordance with the intention of the legislature, irrespective of how the contractors understood it. Exactly the same result is reached even though the parties know nothing of the statute and do not include the provision, and even though they know of it and expressly agree upon the exact contrary. (Citing Corbin on Contracts, § 651) [at 310]
That clause in the collective bargaining agreement which purports to release the municipality from providing a means of defense on the punitive damage aspect of a claim must therefore be declared void as contrary to the intent of the Legislature, and will be stricken from the contract.
The collective bargaining agreement also addressed itself to the issue of indemnification for judgments which might be recovered against members of the bargaining unit. Counsel have not referred to any statutory provision which addresses itself to this issue. In the absence of a controlling statute, the terms of the contract control the rights of the respective parties. The agreement presently before the court requires the municipality to indemnify the individual officers for a judgment of compensatory damages. No right of indemnity exists if a judgment for punitive damage is returned. Such a contractual provision is in accord with public policy. See 57 Am. Jur.2d § 318 at 268; cf. O'Connor v. Harms, 111 N.J. Super. 22 (App. Div. 1970).

*285 II
The City of Elizabeth also seeks a declaratory judgment holding defendant insurance company liable for the cost of defense and any damages which may be awarded in the federal suit. The city bases its claim on a "false arrest" policy purchased from the defendant.
The relevant provisions of the policy are as follows:
A. COVERAGE
1. Subject to the terms, conditions, limitations and exclusions hereinafter set forth, this Insurance is to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay by reason of false arrest (including a false imprisonment arising therefrom), assault and battery (as herein defined) or malicious prosecution ... Underwriters also agree to reimburse the insured for the amount of any costs (which expression shall mean all investigation, adjustment and legal expenses) incurred by the insured with the written consent of Underwriters in the investigation, adjustment and defense of any claims, suits or proceedings which may be brought against the insured within the coverage of this policy even if such claims, suits or proceedings are groundless, false or fraudulent.
* * * * * * * *
(b) Coverage hereunder is afforded solely to claims made by such person or persons being the subject of such arrest.
B. EXCLUSIONS
5. This insurance does not cover or apply to claims:
* * * * * * * *
(e) arising out of any alleged deprivation, breach or violation of constitutional rights or of any federal, state or municipal statute or ordinance.
The insurance company, relying upon the above quoted exclusion, has entirely disclaimed liability for this suit in federal court. Its theory of disclaimer is that the exclusion requires it only to defend suits brought in state court, i.e., that the exclusion provides blanket exemption for any suits instituted against the insured in federal court.
When interpreting the obligations imposed by a contract of insurance, the court is guided by well established precedent. It is a well settled proposition that if the language *286 of a policy will support two meanings, one favorable to the insured and the other favorable to the insurer, that which will sustain coverage will be applied. Mazzilli v. Accident & Cas. Ins. Co. of Winterthur, 35 N.J. 1, 7 (1961). Furthermore, purchasers of insurance are entitled to the broad measure of protection necessary to fulfill their reasonable expectations. Policies should be construed liberally in the insured's favor to the end that coverage is afforded to the full extent that any fair interpretation will allow. Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475 (1961).
It should initially be noted that the limitation contained in paragraph 1(b) of the insurance agreement clearly includes those counts of the complaint in which a per quod theory of recovery is advanced. At to those counts, since they are asserted by one who was not the subject of an arrest or false imprisonment, the insurance company is not obligated to defend or indemnify.
Turning to the quoted exclusion, it should be noted that it does not purport to exclude potential factual occurrences from the scope of insured risks; rather, it directs itself to the elimination of certain legal theories of recovery from the umbrella of protection provided by the policy. Stated affirmatively, the thrust of this provision is to limit coverage to suits which are premised upon a "common law" theory of recovery. While greatly narrowing the scope of coverage, an insurance policy may validly contain such an exclusion. See Newark v. Hartford Accident & Indemnity Co., 134 N.J. Super. 537 (App. Div. 1975); Caplan v. Johnson, 414 F.2d 615 (5th Cir.1972); Peoria v. Underwriter's At Lloyd's, London, 290 F. Supp. 890 (S.D. Ill. 1968).
The first count of the complaint in the federal suit is specifically premised upon 42 U.S.C. § 1983, and alleges that defendants acted under color of state law. Likewise, the third count of the complaint is also premised on this statute, differing from the first count only in the additional allegation that the defendant City of Elizabeth is vicariously liable for the acts of its employees, the individual defendants. *287 As to these counts, the exclusionary clause is clearly applicable; the insuror is neither obligated to defend nor to indemnify.
The fifth count of the complaint realleges those factual allegations set forth at length in the first count of the complaint. Significantly, the basis of jurisdiction alleged by plaintiff is not the federal statute; rather, it is the concept of "continuing" or "pendant" jurisdiction that plaintiff asserts in this count. This jurisdictional predicate developed as a consequence of the adoption of the Federal Rules of Civil Procedure. The appropriate test to determine its use is found in United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d (1966), where the Supreme Court stated:
The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole.
The court went on to note that its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims even though bound to apply state law to them.
Based upon the foregoing quotations, it is apparent that count five of the complaint consists of nothing more than an allegation that defendant police officers' conduct constituted a "common law" tort. Applying the general principles previously cited, it must be concluded that this theory of liability falls within the penumbra of risks encompassed by the policy of insurance, and that the insurance company is therefore obligated to pay for the defense, and to indemnify on this theory of liability.

*288 III
The city, pursuant to N.J.S.A. 40A:14-155, is primarily liable for providing a means of defense for the police officers in the federal action. "Means of defense" is not further defined in that statute; the very definition of that phrase is itself ambiguous. See Black's Law Dictionary, 1132 (rev. 4th ed. 1968). However, the collective bargaining agreement interprets that requirement as obligating the city to actually furnish counsel. Therefore, pursuant to the agreement, the city must provide an attorney to defend the claim for compensatory damages in the federal action.
The city is also obligated to provide a "means of defense" for the entire claim. However, the court has determined that while the city would be obligated to indemnify the police officers for an award of compensatory damages resulting from the conduct of the police officers arising out or incidental to the performance of their duties, there is no such obligation to indemnify a judgment for punitive damages. There is, therefore, an inherent conflict between the interests of the city and the individual police officers on the punitive damages issue, and it would be improper for the attorney supplied by the city to represent the individual defendants on that claim. The officers should therefore select their own counsel to represent them on that aspect of the case. Since the city is statutorily obligated to provide a means of defense for the entire claim, the fees and expenses of the officers' independent counsel are to be paid by the City. The reasonableness of these fees are to be determined by the court.
The insurance company is secondarily liable to both the city and to the individual police officers for the costs of defense relative to count five of the complaint, as well as for any compensatory damages which may be recovered on that theory of liability. Because the allegations in the complaint are only partially encompassed within the scope of *289 the "false arrest" policy, the interests of the insurance company clearly diverge from those of both the city and the individual officers. It therefore is incumbent upon the insurance company to provide independent counsel for the protection of its own interests. Since the insuror contracted to either defeat or pay a claim within the coverage of the policy, it is liable to reimburse the city for the city's expenditures pertaining to the defense of the fifth count. Burd v. Sussex Mutual Ins. Co., 56 N.J. 383 (1970).
The ultimate liability for the actual payment of any damages which may be assessed in the federal suit must await the outcome of that plenary trial. Prior to trial, counsel should request that appropriate interrogatories be submitted to the trier of fact, so that the precise predicate of liability may be ascertained. See Dunne v. Firemen's Fund Ins. Co., 69 N.J. 244 (1976); Newark v. Hartford Ins. Co., supra.