185 N.J. Super. 437 (1982)
449 A.2d 542
LEONARD MEYERSON AND WALTER KANTOR, PLAINTIFFS-RESPONDENTS,
v.
CITY OF BAYONNE, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted June 15, 1982.
Decided July 12, 1982.
*439 Before Judges MICHELS, McELROY and J.H. COLEMAN.
John C. Kennedy argued the cause for appellant (O'Donnell, Kennedy, Vespole & Piechta, attorneys; John F. O'Donnell of counsel and on the brief).
Gerald D. Miller argued the cause for respondent (Miller, Hochman & Meyerson, attorneys; Leonard Meyerson of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Pursuant to leave of this court defendant City of Bayonne appeals from a summary judgment of the Law Division entered in favor of plaintiffs Walter Kantor and his attorney, Leonard Meyerson, declaring that it is legally liable to pay legal fees and costs incurred by Kantor in his successful defense against criminal charges.
Kantor, a member of the Bayonne Police Department, was indicted, together with others, by the Hudson County grand jury, and charged with (1) conspiracy to break and enter Rollins Terminal, Inc.'s tank area, and to steal, in violation of N.J.S.A. 2A:94-1 and N.J.S.A. 2A:119-2; (2) breaking and entering Rollins Terminal with intent to steal, in violation of N.J.S.A. 2A:94-1; (3) entering Rollins Terminal without breaking, with intent to steal, in violation of N.J.S.A. 2A:94-1; (4) attempted theft of property in the care, custody and control of Rollins Terminal, in violation of N.J.S.A. 2A:119-2 and N.J.S.A. 2A:85-5, and (5) misconduct in office, in violation of N.J.S.A. 2A:85-1. All of these criminal charges arose out of conduct and activities in which Kantor was engaged while moonlighting as a part-time security guard employed by Rollins Terminal in Bayonne, New Jersey.
The State claimed that Kantor offered to bribe Carlos Sanchez, a gauger employed by Rollins Terminal, in order to gain his cooperation in a plan to steal chemicals stored at the terminal. According to Sanchez, Kantor approached him to "`doctor' *440 the books and incorrectly report the amount of chemicals removed from the chemical storage tanks, so that Kantor could remove and sell the chemical products to his [Kantor's] contact and Rollins Terminal would not find the loss." Sanchez also claimed that Kantor had told him that he [Sanchez] "could make `really big money'  $50,000 cash  if [Sanchez] could tell the insurance company that it was possible for a tank to leak all of the product," and that "[t]his way it would make it appear that the storage tank had leaked everything into the bay." Kantor also told Sanchez that the "plan was to take everything out of the storage tank in a barge and leave the valve open so it would appear [that] the tank leaked into the bay." Sanchez subsequently reported his conversations with Kantor to his immediate superior who, in turn, informed the terminal manager. Subsequently, the Bayonne police were notified and surveillance was set up which resulted in the arrest of Kantor.
Kantor was tried, and at the conclusion of the evidence the trial judge dismissed certain of the charges and submitted others, including the misconduct in office charge, to the jury. The jury acquitted Kantor on all remaining charges submitted. Thereafter, Kantor asked defendant to pay for his legal fees and expenses, which the defendant refused to do, and this action was instituted. Kantor and Meyerson claim that Kantor is entitled to reimbursement under the statute because the criminal charges were initiated by defendant and resulted favorably to Kantor. On cross-motions for summary judgment, the trial judge entered judgment in favor of Kantor and Meyerson, directing defendant to pay the reasonable legal fees and costs incurred by Kantor in defending the criminal charges. We disagree and reverse.
The pivotal issue is whether Kantor qualifies for reimbursement of legal fees and costs under N.J.S.A. 40A:14-155, which provides:
Whenever a member or officer of a municipal police department or force is a defendant in any action or legal proceeding arising out of or incidental to the performance of his duties, the governing body of the municipality shall provide *441 said member or officer with necessary means for the defense of such action or proceeding, but not for his defense in a disciplinary proceeding instituted against him by the municipality or in a criminal proceeding instituted as a result of a complaint on behalf of the municipality. If any such disciplinary or criminal proceeding instituted by or on complaint of the municipality shall be dismissed or finally determined in favor of the member or officer, he shall be reimbursed for the expense of his defense.
It is clear under this statute that the municipal employer's duty to provide "the necessary means for the defense" of criminal charges against its police officer (where such charges are not "instituted as a result of a complaint on behalf of the municipality"), does not arise in every case where criminal charges are brought against an officer. The proceedings to be defended must be one "arising out of or incidental to the performance of his duties." It is equally clear under this statute that even if the criminal proceedings are instituted by or on complaint of the municipality and determined in favor of the police officer, the police officer is not entitled to reimbursement unless the proceedings arose out of or were incidental to the performance of the police officer's duties. The legislative intent in enacting this statute was discussed in Van Horn v. Trenton, 80 N.J. 528 (1979). There, Justice Mountain, writing for a unanimous court, held:
Although the statements accompanying the bills which eventually produced N.J.S.A. 40A:14-155 indicate little more than that the provision was intended to "increase the morale of police departments," Statement Accompanying Senate Bill No. 26 (1946), the terms of the statute itself evidence an apparent legislative concern that police officers might be discouraged from effectively pursuing their duties if they were forced to provide their own defense against civil actions and criminal charges brought by disgruntled "victims" of law enforcement. Police officers, by the very nature of their duties, are exposed to a substantial risk that such civil or criminal actions will be initiated, regardless of their merits. See generally Township of Edison v. Hyland, 156 N.J. Super. 137 (App.Div. 1978); Township of Edison v. Mezzacca, 147 N.J. Super. 9 (App.Div. 1977). The possibility of having to incur legal expenses to answer for one's conduct as a police officer would most certainly temper one's performance of police duties. We are convinced that the Legislature, by enacting N.J.S.A. 40A:14-155, was obviously attempting to minimize the intrusion of this concern into the momentary decisions which police officer are continually required to make. [at 536-537]
Here, the criminal charges against Kantor did not arise out of nor were they incidental to the performance of any of his duties *442 as a Bayonne police officer. On the contrary, the charges stem solely from the fact that Kantor was moonlighting as a part-time security guard employed by Rollins Terminal. Thus, these charges were not of such a nature or character as to qualify for reimbursement under the statute. Moreover, the charge of misconduct in office, also contained in the Indictment, is not of any different nature or character. It, too, did not arise out of nor was it incidental to the performance of any of his official duties. It fundamentally derived from Kantor's alleged criminal conduct. It was not a charge of misconduct in the sense of that brought in Valerius v. Newark, 84 N.J. 591 (1980). Moreover, the result we reach here is supported by our recent decision in Kauffman v. Glassboro, 181 N.J. Super. 273 (App.Div. 1981). There, we affirmed the trial court's refusal to reimburse a police officer for legal expenses incurred in successfully defending an indictment which charged him with breaking and entering with intent to steal and with common law misconduct in office. There, as here, the alleged criminal conduct was unrelated to the performance of the police officer's duties, as a result of which we pointed out:
Our analysis is not altered by the fact that the indictment also charged the common-law offense of official misconduct. That charge rested only upon the facts of the alleged burglary, and the most recent expression of our Supreme Court on this subject tells us that a conviction for misconduct cannot rest upon criminal behavior which is unrelated to the performance of official duties. State v. Schultz, 71 N.J. 590, 601 (1976). Contra, State v. Cohen, 32 N.J. 1, 10 (1960). But see, concurring opinion by Weintraub, C.J.
Had the indictment gone to trial, the only facts which plaintiff would have been called upon to meet were those pertaining to the burglary. In no way would his powers or position as a police officer have been implicated. To allow reimbursement in such a case merely because plaintiff was then employed as a police officer would advance no discernible policy underlying the statute and would require similar reimbursement in all such cases without limitation no matter how clearly the crime is unrelated to the fulfillment of police duties. See Valerius v. Newark, 168 N.J. Super. 529, 533 (App.Div. 1979), rev'd on other grounds, 84 N.J. 591, supra. [at 277-278]
Thus, notwithstanding the fact that the criminal proceedings here were initiated by a complaint signed by a member of the Bayonne Police Department and determined in favor of *443 Kantor, we hold that Kantor is not entitled to be reimbursed for the legal fees and costs incurred in defending against those charges because they did not arise out of nor were they incidental to the performance of Kantor's duties as a police officer. Accordingly, the judgment in favor of plaintiffs Kantor and Meyerson is reversed, and judgment is entered in favor of defendant dismissing the complaint with prejudice.
Reversed.