MICHAEL A. QUERQUES AND RONALD BUONOCORE, PLAINTIFFS, v. CITY OF JERSEY CITY, MUNICIPAL CORP. OF STATE OF NEW JERSEY, DEFENDANT.

Superior Court of New Jersey
Law Division Hudson County

Decided October 31, 1983.

*Michael A. Querques* for plaintiffs.

*John C. Kennedy,* Corporation Counsel, for defendant (*Jay Hamill,* Fourth Assistant Corporation Counsel, attorney).

## OPINION

YOUNG, J.S.C.

The nature of criminal charges filed against an acquitted police officer whose legal counsel now seeks reimbursement of his fees and expenses from the municipality is at the heart of one of the issues presented by cross-motions for summary judgment. A secondary issue concerns counsel's entitlement when neither he nor his predecessor of record agreed to the city's fee schedule in advance of entering upon their duties. The resolution of both issues invoke the provisions of the relevant statute, *N.J.S.A.* 40A:14–155, and a review of the decisional law which has interpreted and applied those provisions.

Plaintiff, Ronald Buonocore, while a policeman of the City of Jersey City, took office following his election as president of the Jersey City Police Officers Benevolent Association (hereinafter

the Jersey City POBA) on May 1, 1977. Thereafter, on May 1, 1981, the Grand Jury of the County of Hudson returned Indictment No. 136–80 consisting of 24 counts against Buonocore and two other defendants, Joseph Williams, a dentist, and David Solomon, an attorney at law. The counts, summary of which is set out in the margin, alleged conspiracy, bribery, uttering forged instruments, false pretenses and misconduct in office, all arising from the officer's alleged role in the administration of a prepaid dental program and of a prepaid legal services program contracted for by the Jersey City POBA.[1]

---

[1]Count 1 charges a conspiracy in that Buonocore and Williams, between December 1, 1976 and July 1, 1977, agreed with one Ralph Lucignano (a duly appointed representative of the Jersey City POBA) to violate the laws of the State of New Jersey by "knowingly, willfully and unlawfully did offer or promise or accept or agree to accept money to a duly appointed representative of a labor organization with intent to influence him in respect to his decisions and duties as such a representative in violation of *N.J.S.A.* 2A:93–7." The overt acts describe an alleged scheme whereby Williams, a licensed dentist, was awarded the prepaid dental program with the POBA in exchange for a "kickback" to Lucignano who agreed to split the illicit payment with Buonocore in exchange for his agreement not to cancel the contract, *N.J.S.A.* 2A:98–1 and 2A:98–2.

Count 2 charges a conspiracy in that on or about July 1, 1978, Buonocore and David Solomon, an attorney at law, did likewise enter into a similar agreement related to a prepaid legal services program, in which the attorney offered to pay to both Lucignano and Buonocore sums of money equal to a percentage of the premiums in exchange for being awarded the contract. Buonocore "acting as representative of the Jersey City POBA" awarded the contract to attorney Solomon, all in violation of *N.J.S.A.* 2A:98–1 and 2A:98–2.

Count 3 does not relate to Buonocore.

Count 4 charges that on November 10, 1978, attorney Solomon "with intent to influence Ralph Lucignano and Ronald Buonocore, duly appointed representatives of a labor organization, to wit: the Jersey City Police Officers Benevolent Association," in execution of a bribery scheme did pay sums of money to the two named representatives in exchange for securing a 3-year prepaid legal service program for the union membership. *N.J.S.* 2A:85–1 and 2A:93–7.

Count 5 charges that on November 10, 1978 Buonocore "was unlawfully and corruptly influenced in his decisions and duties as a duly appointed representative of a labor organization, to wit: the Jersey City Police Officers Benevolent Association," and in execution of his agreement to

secure with attorney Solomon a 3-year prepaid legal services program to the membership he accepted bribes from the attorney. *N.J.S.A.* 2A:85–1 and 2A:93–7.

Count 6 charges that between April 19, 1978—June 25, 1979, Buonocore conspired with Lucignano "unlawfully to obtain by false statements and representation, cash money of the Jersey City Police Officers Benevolent Association, in violation of *N.J.S.A.* 2A:111–1." The Count also charges the uttering of checks of the Jersey City POBA drawn on the Garden State National Bank containing false, forged and counterfeit endorsements of David Solomon and Joseph Williams, all with intent to defraud the Jersey City POBA and the bank, in violation of *N.J.S.A.* 2A:109–1(b).

Count 7 charges uttering forged instruments in that on April 15, 1978 Buonocore had a Jersey City POBA check in the sum of $7,000. payable to the order of Joseph Williams bearing a forged endorsement of the payee cashed the same at the Garden State National Bank "with intent to defraud the Jersey City POBA and the bank." *N.J.S.A.* 2A:109–1.

Counts 8 through 14 charge that on dates noted on a schedule annexed Buonocore cashed checks of the Jersey City POBA at Garden State National Bank, the checks bearing forged endorsements of either Solomon or Williams, with intent to defraud the labor organization. *N.J.S.A.* 2A:109–1(b).

Count 15 charges false pretenses in that on April 19, 1978, Buonocore did intend to cheat and defraud the Jersey City POBA and Garden State National Bank by presenting fictitious papers, *i.e.,* a check in the amount of $7,000. bearing a forged endorsement of Joseph Williams. *N.J.S.A.* 2A:111–1.

Counts 16–22 charge false pretenses in that on dates specified Buonocore "intending to cheat and defraud the Jersey City Police Officers Benevolent Association and the Garden State National Bank," did present checks payable to either Williams or Solomon, bearing forged endorsements by which he obtained money, contrary to provisions of *N.J.S.A.* 2A:111–1.

Count 23 charges that on or about May 1, 1977 and July 1, 1977, Buonocore, "being a Police Officer of the City of Jersey City and an officer of the Jersey City Police Officers Benevolent Association, . . . did confederate by agreement with Ralph Lucignano and Joseph Williams to accept or agree to accept money as a duly appointed officer of a labor organization, to wit: President of the Jersey City Police Officers Benevolent Association, with intent to be influenced in respect to his decisions and duties as such a Police Officer of the City of Jersey City and an officer of the Jersey City Police Officers Benevolent Association, in violation of *N.J.S.A.* 2A:93–7, and did thereby willfully and corruptly prostitute, violate and betray the duties of said public office and the public trust and confidence reposed in him, contrary to the provisions of *N.J.S.A.* 2A:85–1, . . ."

Count 24 charges that on or about July 1, 1978, Buonocore, "being a Police Officer of the City of Jersey City and an officer of the Jersey City Police Officers Benevolent Association, did . . . confederate by agreement with Ralph Lucignano and David Solomon to accept or agree to accept money as a duly appointed officer of a labor organization, to wit: President

On May 6, 1981 Buonocore filed with the City a "Request for Counsel" form by which he advised that he had "retained the law office of Samuel R. DeLuca." The Assistant Corporation Counsel, by form letter dated May 11, 1981, acknowledged receipt of the request for counsel and advised that the attorney would be in receipt of a fee schedule. That letter also advised that no payment would be made until a signed agreement was received from counsel of choice acknowledging his acceptance of the fee schedule. A letter of same date to Mr. DeLuca transmitted the fee schedule with the caveat: "The City of Jersey City shall *not* be liable for any services rendered prior to the agreement being executed; ..." (Underscoring in original) At the foot of the letter there was provision for counsel's endorsement of adherence to the fee schedule. Neither Mr. DeLuca nor Mr. Querques, who was engaged as counsel by Buonocore on August 5, 1982, ever filed a signed copy of the agreement with the Corporation Counsel.

A trial concluded January 12, 1983 with entry of a judgment of acquittal of Buonocore. By letter of February 25, 1983, Mr. Querques presented his bill to the Mayor of Jersey City, requesting payment of $48,529. for legal services and disbursements. When the claim was not honored Querques and Buonocore filed this civil action.

The point of departure is the statute upon which the claim for reimbursement is based, *N.J.S.A.* 40A:14–155, which provides the following:

Wherever a member or officer of a municipal police department or force is a defendant in any action or legal proceeding arising out of or incidental to the performance of his duties, the governing body of the municipality shall provide

of the Jersey City Police Officers Benevolent Association, with intent to be influenced in respect to his decisions and duties as such a Police Officer of the City of Jersey City and an officer of the Jersey City Police Officers Benevolent Association, in violation of *N.J.S.A.* 2A:93–7, and did thereby willfully and corruptly prostitute, violate and betray the duties of said public office and the public trust reposed in him, contrary to the provisions of *N.J.S.A.* 2A:85–1, ..."

said member or officer with necessary means for the defense of such action or proceeding, but not for his defense in a disciplinary proceeding instituted against him by the municipality or in a criminal proceeding instituted as a result of a complaint on behalf of the municipality. If any such disciplinary or criminal proceeding instituted by or on complaint of the municipality shall be dismissed or finally determined in favor of the member or officer, he shall be reimbursed for the expense of his defense. [*L.* 1972, *c.* 165]

Three opinions of our Supreme Court in recent years have interpreted and applied the provisions of the statute. The first is *Van Horn v. City of Trenton,* 80 *N.J.* 528 (1979), rev'g 159 *N.J.Super.* 115 (App.Div.1978). Van Horn, a Trenton police officer, sought reimbursement for expenses incurred while he was subject of a grand jury investigation based on his shooting a motorist while off-duty. The court answered the two issues submitted in the affirmative, namely that a grand jury investigation is an "action or legal proceeding," and that the officer was a "defendant." In citing the legislative history, the court quoted from the *Statement Accompanying Senate Bill* No. 26 (1946), and noted that the provision for defense of an accused officer was intended to "increase the morale of police departments." Such Legislative solicitude for officer morale was advanced, the court reasoned, by moderating an officer's apprehensions about the financial aspect of defending against criminal charges brought by "disgruntled 'victims' of law enforcement." *Id.* at 536–37.

It is of significance that the court perceived that the direction from which a challenge to police morale would emanate was from disgruntled "victims" of law enforcement. It is that residual principle of the *Van Horn* opinion which induced the Appellate Division to deny reimbursement in *Kauffman v. Glassboro,* 181 *N.J.Super.* 273 (1981), in which petition for certification was denied, 91 *N.J.* 523 (1982). Officer Kauffman, assigned to patrol a shopping center, was indicted for breaking and entering with intent and for misconduct in office. Judges Botter and Antell concluded that the indictment alleged that the

plaintiff acted as a common burglar, "not even colorably related to the performance of his duties, . . ." *Id.* at 277.[2]

*Valerius, Zazzali & Whipple v. City of Newark*, 84 *N.J.* 591 (1980), rev'g 168 *N.J.Super.* 529 (App.Div.1979), presented both of the issues now before this court in a vastly different factual context. The officer had been charged with conspiracy to take money under false pretenses, taking money under false pretenses and misconduct in office. The charges emerged from the officer's alleged participation in a scheme in which he would seize bogus hashish together with money paid by victimized purchasers and then pretend to arrest the impersonating sellers. In reversing the Appellate Division, and deciding in favor of the officer's claim for reimbursement, the court resorted to a new concept, that of the "status" of the police officer, while at the same time declared that concept to be inclusive of the statutory language of "arising out of or incidental to the performance of his duties." *Id.*, 596–97.

The state of the law relating to a municipality's obligation following *Valerius* was such that Chief Justice Wilentz, writing for the majority in *Moya v. New Brunswick*, 90 *N.J.* 491 (1982), was constrained to signal the court's intention "[t]o provide further guidance" to the trial courts and "to clarify when that obligation exists . . ." The court took the occasion to explicate the concept of "status" introduced in *Valerius:*

> We concluded that while the charges did not arise from the performance of Valerius's duties . . . the charges never would have been made but for the fact that Valerius was a police officer. Since it was his status as a police officer that led to the charge, we concluded that he should be reimbursed for his counsel fees since it would be grossly unfair to do otherwise. [*Id.* at 498.]

Thus, it is the "but for" component which distinguishes the "status" charge from the "performance of duty" charge. Addi-

---

[2]In retrospect, the Supreme Court in *Moya v. New Brunswick*, 90 *N.J.* 491 (1982), commented on the *Kauffman* holding. "If the charge in *Kauffman* was that the theft occurred while the officer was on duty (the record is not clear), it would be covered by the statute if the result was a verdict of acquittal." *Id.* at 507, *n.* 10.

tional features of the "status" category emerge from the view the court took of the burglary charges against Moya:

The charges against him ... were presumably made primarily because he was a police officer. At the very least, it is fair to conclude his status was a substantial factor. [*Id.*]

Following a detailed delineation of the factors which comprise a "performance" charge as distinguished from a "status" charge, the majority concluded that both warrant coverage by the statute. As for the "test" to be applied when "status" is in issue, the court offered the following guidelines:

There is no easy test to determine whether a charge arises out of an officer's status. Each case requires a consideration of the particular circumstances giving rise to the particular charge. A mere allegation that a charge has been lodged because of status is insufficient. In order to establish that a 'status' charge exists, there must be a showing of the relationship between the charge and the defendant's position as a police officer. * * * [*Id.* at 510, *n.* 13.]

More direct was the description of the "true 'status' charge" as "a charge that, if false, most likely was made against defendant because of being a police officer." *Id.* at 509; reiterated at 511, *n.* 14.

The court explained the purpose of the statute in which preoccupation with police morale appears as the transcendant consideration:

The Legislature intended through this statute to 'increase the morale of police departments,' *Statement, Sen. Bill* 26 (1946), and to encourage the effective pursuit of police duties, *Van Horn v. City of Trenton,* 80 *N.J.* 528, 536–37 (1979), by providing counsel to police officers who are the subject of charges. [*Id.* at 500; *see also* 505, 507, 510.]

Equally important is the expressed recognition that the challenge to police morale emanates from the arrest situation, the "universally understood" objective of the statute, and "what we believe was the main purpose of this legislation, namely to free police from concerns about the cost of counsel in connection with arrests." *Id.* at 502, 504.

This review provides the framework within which plaintiff's claim must be evaluated. Plaintiff counsel contends that the record satisfies both the "performance" and the "status" criteria; the City responds that the charges were unrelated to Buonocore's performance or status as a police officer.

The Supreme Court recognized that not every charge against a police officer would entitle him to the benefit of counsel fees, whether he was acquitted or not. *Moya,* 91 *N.J.* 491, 510 *n.* 13; *Van Horn,* 80 *N.J.* 528, 537. To resort to the statutory language or to the judicial amendment thereto of "status" charges, is not only redundant but begs the question. The court acknowledged that each case requires a consideration of the particular circumstances giving rise to the particular charge.

This court adopts a mode of analysis sanctioned by decisional precedents and especially appropriate to the factual context of the pending case. That approach places the focus upon what a police officer is engaged to do, or as stated by Chief Justice Weintraub, "that duty, affirmative in nature, for the performance of which the public office was created." *State v. Cohen,* 32 *N.J.* 1, 13 (1960).

> In the case of a policeman, the duty for the performance of which his office was constituted is the enforcement of the penal laws, including prevention of violations and the detection and arrest of offenders. [*Id.*]
>
> \* \* \* \* \* \* \* \*
>
> A police officer is not appointed to prevent *himself* from committing offenses, nor to detect and arrest *himself.* Rather his *official* role is so to deal with others. [*Id.* at 14; emphasis in original]

Time and again courts have had occasion to describe the "fundamental duties" of a police officer "from chief of police to patrolman" in these words: "to be on the lookout for infractions of the law and to use due diligence to discovering and reporting them, and in a proper case arresting the perpetrator and lodging and prosecuting a proper complaint." *State v. Donovan,* 132 *N.J.L.* 319, 321 (Sup.Ct.1945). *See also State v. Borrell,* 18 *N.J.* 16, 21 (1955); *City of Asbury Park v. Dept. of Civil Service,* 17 *N.J.* 419, 429 (1955). At other times the duties of police officers have been described as those which flow from the sovereign authority. "A policeman is a public officer concerned with the administration of public duties." *Isola v. Bor. of Belmar,* 34 *N.J.Super.* 544, 555 (App.Div.1955).

Judge Matthews resorted to this approach in *Durkin v. Thomas,* 77 *N.J.Super.* 311 (Law Div.1962), when he applied the terms

of the predecessor to the statute under review, then codified as *N.J.S.A.* 40:11–19. The mandate to provide necessary legal aid was keyed to proceedings arising out of the performance of police or fire duty or out of any incident arising in the line of such duty. Judge Matthews described the "test" in these words: "The concept here is line of duty. In determining whether a given act is within the line of duty, the test is whether the act done was in prosecution of the employer's business." *Id.* at 314. *See also Bor. of Highlands v. Davis,* 124 *N.J.Super.* 217 (Law Div.1973); *City Council of Elizabeth v. Fumero,* 143 *N.J.Super.* 275, 283 (Law Div.1976); *Newark v. Bellezza,* 159 *N.J.Super.* 123, 128–29 (App.Div.1978). Likewise, the Appellate Division in *Tp. of Edison v. Hyland,* 156 *N.J.Super.* 137 (1978), canvassed both statutes and opinions for the specifications of the office of policeman, police marshall, constable, prosecutor and county detective. The common element is that of the officer's role *vis-a-vis* the public, *i.e.,* to prevent crime and preserve the peace. *See Van Ness v. Haledon,* 136 *N.J.L.* 623, 626 (E. & A. 1948); *City Council of Garfield v. Perrapato,* 117 *N.J.Super.* 184, 193–94 (App.Div.1971). The emphasis of this approach is fully compatible with the rationale of the Supreme Court as expressed in *Van Horn, Valerius,* and *Moya.*

When Officer Buonocore was administering the affairs of the Jersey City Police Officers Association was he "concerned with the administration of public duties," or "performing duties which flow from the sovereign authority?" *Cf., Duncan v. Board of Fire, etc., Commissioners,* 131 *N.J.L.* 443, 446 (Sup.Ct. 1944). Is the office of president of the Jersey City POBA an "office" within the scheme of government to which the incumbent is invested with authority delegated, directly or indirectly, from the state? *See Fredericks v. Board of Health,* 82 *N.J.L.* 200, 201 (Sup.Ct.1912). This court answers both questions in the negative.

As reference to the summary of the Indictment, footnote 1, *supra,* will confirm, each and every one of the charges directed

to Buonocore finds its genesis in his conduct as president of the Jersey City POBA. Apart from Count 23 and Count 24 to be noted presently, all of the other counts identify Buonocore as a duly appointed representative of a labor organization, to wit, the Jersey City Police Officers Benevolent Association. Indeed, the investigation was initiated by the Prosecutor upon receipt of anonymous letters written by persons identified as members of that association. The contract for prepaid dental services which was central to the charges reflect Buonocore's signature in his capacity as president of the association, not simply as a police officer. The entire focus of the Grand Jury probe was upon the alleged misappropriation of union funds by Buonocore in his capacity as president. If there was a "victim" of the respective charges of conspiracy, bribery, uttering forged instruments, false pretenses and misconduct in office it was Buonocore's fellow officers in the association and/or the Garden State National Bank.

By contrast to *Moya,* the charges against Buonocore were not made "solely and primarily" because of his identity or status as a police officer. Nor did the charges "grow out of the unique vulnerability of a police officer attributable to that occupation." The fact that Buonocore was contemporaneously a police officer as well as president of the benevolent association was merely incidental and immaterial to the charges. The description of Buonocore as a police officer is surplusage. *Cf., State v. Cohen, supra,* 32 *N.J.* 1, 16. Moreover, the charges against Buonocore did not arise from any "arrest situation" which is said to be the "universally understood" objective of the statute.

There appear to be no points of congruence to the legislative purpose of freeing police from apprehensions arising from the defense of claims of "disgruntled victims" of either the arrest situation or from law enforcement activities. Moreover, it is difficult to fathom how the legislative purpose of improving police morale and performance would be promoted by extending the legislative remedy in light of the charges filed against

Buonocore. Those charges did not "grow out of the unique vulnerability of a police officer attributable to that occupation," unless it can be said that when a policeman is elected to the presidency of a police benevolent association his exposure to criminal charges becomes greater than prior to such election. The incidence of criminal charges filed against policemen in their capacity as officers of such associations has never been cited as a reason for the creation of the legislative remedy. Correlative thereto, while Buonocore's duties as a police officer were to the community as a whole, as president of the Police Officers Benevolent Association his fiduciary duties ran to a relatively small group of fellow officers.[3]

Nor do the charges of misconduct in office as found in Count 23 and Count 24 draw this case within the vortex of the statute. Only in those two counts is Buonocore identified as "being a Police Officer of the City of Jersey City and an officer of the Jersey City Police Officers Benevolent Association." The charge of misconduct in office did not arise out of nor was it incidental to the performance by Buonocore of any public duty. Charges of misconduct lodged against the police officer in *Kauffman v. Glassboro, supra,* 181 *N.J.Super.* at 277–78, did not salvage the claim for reimbursement. *See also Meyerson v. Bayonne,* 185 *N.J.Super.* 437 (App.Div.1982), in which the court referred to the charges against a police officer, Kantor, who had been charged with conspiracy to break and enter, among other

---

[3]Plaintiffs place great weight upon the City's response to Demand for Admissions, No. 8:

> 8. The City of Jersey City authorizes the President of the Jersey City Police Officers' Benevolent Association to function and perform the duties of the President and to be paid by the City of Jersey City during the term of his presidency as a patrolman from the patrolman's payroll.
>
> Ans. Denied as to form in which it is presented. The president of the association is assigned as police officer to special duty. City has agreed, via contract, that the president shall be entitled to administer the provisions of this agreement, except in emergencies.

That response does no more than express the City's acquiescence to Buonocore serving as representative of the benevolent association.

charges, including misconduct in office, and denied reimbursement with the explanation here quoted:

> Moreover, the charge of misconduct in office, also contained in the Indictment, is not of any different nature or character. It, too, did not arise out of nor was it incidental to the performance of any of his official duties. It fundamentally derived from Kantor's alleged criminal conduct. *Id.* at 442.

The rationale of the cases cited was implicitly recognized by the Supreme Court in *Moya* when it was noted that the third indictment, charging misconduct in office, was dismissed on motion of the prosecutor "presumably because it was based on the charges of which Moya had been acquitted." 90 *N.J.* at 496. In short, the charge of misconduct in office is derivative.

It is the conclusion of this court after applying any and all of the tests harvested from the several opinions of the Supreme Court that the reach of the statute, *N.J.S.A.* 40A:14–155, does not encompass the charges brought against Ronald Buonocore, and that accordingly the City of Jersey City is not liable for the legal fees and expenses arising from the defense of the charges filed against him. Otherwise expressed, the criminal proceedings against Buonocore did not arise out of nor were they incidental to the performance of his official duties as a police officer nor out of his status as a police officer.

The court does not find it necessary to address the secondary issue which pertains to the liability of a municipality to reimburse for legal fees and expenses when counsel for the police officer has failed to subscribe to the City's fee schedule in advance of entering upon his duties.

On the authorities cited and the reasoning set forth, the motion for summary judgment of the Defendant, City of Jersey City, is granted; the motion of the Plaintiffs, Michael A. Querques and Ronald Buonocore for an order of summary judgment is denied. Counsel for the municipality may submit an appropriate form of order pursuant to the five-day rule.