GERARD VALERIUS AND ZAZZALI, ZAZZALI & WHIPPLE,
PLAINTIFFS–APPELLANTS, v. CITY OF NEWARK,
DEFENDANT–RESPONDENT.

Argued September 8, 1980—Decided December 23, 1980.

*Lawrence A. Whipple, Jr.,* argued the cause for appellants (*Barry H. Evenchick* and *Zazzali, Zazzali & Whipple*, attorneys; *Barry H. Evenchick* and *James R. Zazzali,* of counsel and on the brief).

*John C. Pidgeon,* First Assistant Corporation Counsel, argued the cause for respondent (*Salvatore Perillo*, Corporation Counsel, attorney; *Thomas W. Matthews*, Assistant Corporation Counsel, of counsel and on the brief).

The opinion of the Court was delivered by

SULLIVAN, J.

This appeal, on certification granted, 82 *N.J.* 280 (1979), presents the question whether a City of Newark police officer, acquitted by jury verdict of three criminal charges, is entitled to

reimbursement by the city for legal expenses incurred in his defense. Plaintiffs in the case are Gerard Valerius, a police officer of the City of Newark at the time of his indictment, and the law firm of Zazzali, Zazzali & Whipple, which represented Valerius during his criminal trial. The claim for reimbursement is based upon *N.J.S.A.* 40A:14–155 which provides:

Whenever a member or officer of a municipal police department or force is a defendant in any action or legal proceeding arising out of or incidental to the performance of his duties, the governing body of the municipality shall provide said member or officer with necessary means for the defense of such action or proceeding, but not for his defense in a disciplinary proceeding instituted against him by the municipality or in a criminal proceeding instituted as a result of a complaint on behalf of the municipality. If any such disciplinary or criminal proceeding instituted by or on complaint of the municipality shall be dismissed or finally determined in favor of the member or officer, he shall be reimbursed for the expense of his defense.

On or about November 12, 1975, the Essex County Grand Jury returned a four–count indictment against Gerard Valerius and four other individuals. Valerius was charged with misconduct in office (Count 1), conspiracy to take money under false pretenses (Count 2), and taking money under false pretenses (Count 3). The essence of the indictment was that Gerard Valerius and Vincent Squatrito, also a Newark police officer, conspired with Vincent DiModica and Raymond Carl Freda whereby DiModica and Freda arranged a proposed sale of a quantity of hashish to two other individuals for a price of $23,000. At the time and place arranged for the sale, Officers Valerius and Squatrito appeared on the scene, confiscated the hashish and the $23,000 on behalf of the Newark Police Department and pretended to arrest DiModica and Freda. The indictment charged that, in fact, no such quantity of hashish ever existed and that the two officers and their co–conspirators intended to trick and defraud their victims into believing that the hashish and the purchase money were being seized by the police department. Officers Valerius and Squatrito never filed any report concerning this alleged incident or turned in any of the money which was purportedly confiscated.

The Internal Affairs Division of the Newark Police Department, an agency established to investigate complaints against

police officers, was notified of the indictment by the Essex County prosecutor's officer. The two officers were summoned to the Division and informed of the indictment. Valerius testified that Lieutenant Gauthier of the Division told him he was in very big trouble and "should get a lawyer." The Lieutenant admitted that he advised Valerius to seek legal advice. Nothing was said, however, about the city furnishing Valerius with legal representation or that he needed official permission before retaining his own attorney.

Valerius consulted George L. Schneider of the firm of Zazzali, Zazzali & Whipple, who agreed to represent him. Schneider told Valerius that his fee would approximate $10,000 and Valerius paid him a $3,000 retainer.

Schneider testified that following his retention, he spoke to the officers in charge of the Internal Affairs Division, told them he had been retained by Valerius and that since the charge was misconduct in office, if Valerius were acquitted, the city would have to pay his attorney's fees. Schneider testified that this was the established practice he had with the city. He mentioned more than ten instances in which he had been retained without prior city approval by police officers charged with misconduct and, following their acquittals, the city had paid his legal fees in each case.

The criminal trial lasted from April 26 to May 7, 1976. Valerius testified in his own defense. After denying that the incident described in the indictment ever took place, he expressed the "suspicion" that the testimony of the chief witness against him was motivated by personal animus, because he previously had accused the witness's son of breaking and entering. At the conclusion of the trial, the jury returned a verdict of "not guilty" on all charges. Schneider then prepared an itemized bill on behalf of his law firm for the services rendered. This bill, in the amount of $10,851, was submitted to the city, which refused payment. The instant suit was then filed by Valerius and Zazzali, Zazzali & Whipple, seeking to compel the City of Newark to pay $20,000, which plaintiffs alleged was the reasonable value of the legal services rendered.

The city defended the suit on the grounds that at the time Valerius retained Zazzali, Zazzali & Whipple the established city policy under *N.J.S.A.* 40A:14–155 obliged a police officer to obtain official permission before employing private counsel. The city claimed that Valerius had not followed the required procedure and therefore it was not responsible for his attorney's fees. With regard to this defense, the trial court found that there was no proof that Valerius had actual notice of this policy, that Valerius had been advised by the Division to obtain a lawyer and that the city "had established a practice of paying defense counsel upon submission of a bill without prior arrangement."

The city also argued that *N.J.S.A.* 40A:14–155 only benefited police officers and thus was special legislation violative of *N.J. Const.* (1947), Art. IV, § VII, par. 9. The trial judge, however, concluding that the classification used was not shown to be arbitrary, unreasonable or irrational, upheld the constitutionality of the statute.

A further defense presented was that the statute was inapplicable as the actions charged to Valerius did not arise out of or occur in the course of his duties as a police officer. The trial court rejected this contention out of hand because of the prior jury verdict acquitting Valerius of all charges.

Finally, the city submitted that plaintiffs' demand for a $20,000 fee was unreasonable and excessive since counsel had originally sent a bill of $10,851, to the city. The trial court, however, considered the bill previously submitted as only an offer which the city did not accept. It therefore concluded that counsel was entitled to the reasonable value of his services, which the court fixed at $18,275 on the basis of expert testimony presented.

The Appellate Division reversed and ordered that judgment be entered in favor of the city. It held that applicability of *N.J.S.A.* 40A:14–155 was to be determined by a consideration of the charges set forth in the indictment. A review of the factual allegations therein made it clear to the Appellate Division "that

the conduct charged against Valerius, and therefore the indictment itself, did not arise out of [nor was it] incidental to the performance of his duties as a police officer, but rather, if true, was a perversion and prostitution of his responsibilities as a police officer." 168 *N.J.Super.* 529, 532 (1979). The Appellate Division also held that the fact that Valerius was found innocent of all charges was immaterial as the obligation of providing a defense for the officer, if otherwise called for by the statute, arises before the complaint is prosecuted and thus before the outcome is known. We disagree with the Appellate Division's conclusion that the acquittal of Valerius is immaterial to determining the municipality's obligation.

█ A literal reading of the statute would support the Appellate Division view that in all actions or proceedings against an officer, not instituted by a municipality, the determination as to whether the municipality has an obligation to provide the officer with the necessary means of defense must be made prior to trial or prosecution. In some cases, however, the question whether the action or proceeding arose out of the officer's performance of his duties or was incidental thereto, depends on the development of the underlying facts which should await the final outcome of the action or proceeding.

In the instant case, the charges against Valerius involved his status as a police officer and his use of that status in the alleged incident. The conduct charged, however, if true, constituted a perversion and prostitution of his duties and responsibilities as a police officer. Had Valerius been convicted of these charges, this conviction would have established that his conduct neither arose out of nor was incidental to the performance of his duties and, hence, was not within the scope of *N.J.S.A.* 40A:14–155.

However, the fact is that Valerius was found innocent of all charges. Thus the municipality had no basis for concluding that Valerius had engaged in conduct that constituted a perversion and prostitution of his duties and responsibilities as a police officer. Since the charges in the indictment alleged improper use of his status as a police officer and, since the jury, after the

development of the underlying facts at trial, rejected the truth of the charges, the matter would be included within the statutory language "arising out of or incidental to the performance of his duties." Justice Mountain indicated as much in *Van Horn v. City of Trenton*, 80 *N.J.* 528, 536–537 (1979), when he wrote that

the terms of the statute itself evidence an apparent legislative concern that police officers might be discouraged from effectively pursuing their duties if they were forced to provide their own defense against civil actions and criminal charges brought by disgruntled "victims" of law enforcement. Police officers, by the very nature of their duties, are exposed to a substantial risk that such civil or criminal actions will be initiated, regardless of their merits.

We now turn to the city's contention that Valerius did not follow established procedures by his failure to obtain official permission before retaining private counsel. We agree with the trial court's observations that there was no proof that Valerius had actual notice of the city's alleged procedures and that he had been advised to consult an attorney. Indeed, Valerius in retaining private counsel seems to have followed a widespread practice that allowed a police officer, charged with criminal conduct arising out of his status as an officer, to have private counsel defend him at city expense if the officer was acquitted of the charges.

The city also argues that the ruling made in *Township of Edison v. Mezzacca*, 147 *N.J. Super.* 9 (App.Div. 1977), should control. *Mezzacca*, approved by this Court in *Van Horn v. City of Trenton, supra*, 80 *N.J.* at 538–539 n.3, concerned a civil suit against several patrolmen by an individual who charged that he had been illegally arrested, detained and assaulted by them. The *Mezzacca* decision holds that under *N.J.S.A.* 40A:14–155, where the municipality has not initiated the proceedings against an officer, the municipality is bound to provide only the means of defense. The municipality must be given the opportunity to determine whether it will provide legal representation or approve the retention of private counsel. Thus, its statutory obligation to provide the means of defense does not extend to payment of counsel employed "by a police officer without the prior agreement of the municipality to do so." 147 *N.J. Super.* at 15. In *Mezzacca* it was undisputed that the action against the

officer arose out of the officer's performance of his duties and that the municipality did not question its statutory obligation to provide the officer with the necessary means of defense. *Mezzacca* was primarily concerned with how the municipality should fulfill its admitted statutory obligation.

Aside from the question of retroactivity,[1] we conclude that the *Mezzacca* rule is only partially applicable to the situation where it is not clear from the indictment, or the underlying conduct charged, whether the legal proceedings are related to the officer's performance of his duties. In this type of situation, the officer should immediately notify the municipality of the charges so that it may determine whether it bears the statutory obligation to provide the officer with the "necessary means for the defense," or whether such determination must await the development of the underlying facts and the outcome of the proceeding. In the latter event, the officer may retain private counsel and if exonerated of the charges and it appears that they arose out of or were incidental to the performance of his duties, the municipality would have the obligation under *N.J. S.A.* 40A:14–155 to pay the reasonable counsel fees incurred by the officer.

We recognize that this interpretation is not found in a literal reading of *N.J.S.A.* 40A:14–155. However, it has been said that in some instances there is no surer way to misread a document than to read it literally. *Schierstead v. Brigantine*, 29 *N.J.* 220, 231 (1959). In this case it would be the height of unfairness to hold that the officer must pay the legal expenses incurred in defending against the charges out of his own pocket, even though the trial and jury verdict established that the jury did not believe the truth of the charges against him and that the action arose out of or was incidental to the performance of his duties. It seems clear that in such case the legislative intent as expressed in the overall statute is to protect the officer and

---

[1]The retention of private counsel by Valerius in the criminal proceedings took place about eight months prior to the Appellate Division decision in *Mezzacca*.

require that he be reimbursed for the amount of reasonable legal fees incurred. See *Suter v. San Angelo Foundry & Machine Company,* 81 *N.J.* 150, 160 (1979).

The instant case must be distinguished from the great majority of situations where the officer, admittedly in the performance of constabulary duties, is charged with having used excessive force, made an illegal arrest, or otherwise exceeded his police authority. An action or proceeding (not instituted by the municipality) brought against the officer arising out of such a situation would immediately trigger the provisions of the statute and require the municipality to provide the necessary means of defense in the manner outlined in *Mezzacca,* rather than await the further development of facts and the outcome of the action or proceeding. Indeed, the outcome would be immaterial insofar as the municipality's statutory obligation is concerned. The necessity for awaiting the determination of the criminal trial proceedings will occur only under unusual circumstances such as are presented in this case.

■ As heretofore noted, at trial the city argued that *N.J.S.A.* 40A:14–155 constitutes special legislation and is unconstitutional under *N.J.Const.* (1947), Art. IV, § VII, par. 9. On appeal it is also claimed that the statute directs the use of public funds for a private purpose, contrary to *N.J.Const.* (1947), Art. VIII, § III, par. 2, and is unconstitutional for that reason too.

Neither contention has merit. The separate classification of police officers for this kind of statutory treatment has a clear, rational basis and does not constitute special legislation. As we said in *Van Horn, supra,* "[p]olice officers, by the very nature of their duties, are exposed to a substantial risk that ... civil or criminal actions will be initiated, regardless of their merits." 80 *N.J.* at 536–537. So viewed, the statute is general legislation. *Roe v. Kervick,* 42 *N.J.* 191, 233 (1964). The argument that the statute directs the use of public funds for a private purpose also fails. The statute relates to an essential function of government and limits the use of municipal funds and resources to situations arising out of or incidental to the performance of

police duties. The object sought to be accomplished affects the public welfare and is in the public interest. *Roe v. Kervick, supra,* at 207.

The trial court found that the reasonable value of the legal services rendered was $18,275, despite the fact that the bill submitted to the city by counsel was for $10,851. The court characterized the bill as an offer which the city did not accept. We view the matter differently. While there was testimony to support the figure arrived at by the trial court, fixing the fee at almost double the amount originally billed smacks of a punitive award. Counsel had estimated that his fee would approximate $10,000. In submitting an itemized bill for $10,851 counsel obviously was fully aware of the nature and extent of services rendered and was satisfied to accept the amount billed as full compensation for services rendered. In these circumstances, we conclude that counsel should be held to the amount of the bill submitted.

The judgment of the Appellate Division is reversed and the matter remanded for entry of judgment in favor of plaintiffs for $10,851, interest to run as provided in the original judgment.

*For reversal and remandment*—Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*For affirmance*—none.