EUDE MOYA, BENEDICT & ORBAN, ESQUIRES, BENEDICT, OR-BAN & ALTMAN, ESQUIRES, AND BENEDICT & ALTMAN ESQUIRES, PLAINTIFFS-RESPONDENTS, v. CITY OF NEW BRUNSWICK, DEFENDANT-APPELLANT.

Argued November 30, 1981—Decided August 10, 1982.

*James M. Cahill,* Assistant City Attorney, argued the cause for appellant (*Gilbert L. Nelson,* City Attorney, attorney).

*Joseph J. Benedict* argued the cause for respondents (*Benedict and Altman,* attorneys).

The judgment of the Court was delivered by

WILENTZ, C. J.

This case presents the question of whether a police officer is entitled to reimbursement from a municipality for legal expenses incurred in successfully defending himself against criminal charges. *See Valerius v. Newark,* 84 *N.J.* 591 (1980). We hold that even though the charges did not arise from the performance of his duty, but rather from his status as a police officer, the acquitted police officer is entitled to such reimbursement. We include in such "status" charges false allegations that the officer was involved in police corruption, here a burglary ring consisting of both on-duty and off-duty officers. Where the charges are the kind to which police are exposed because of their occupation—whether because of the performance of their duties or simply because of being a police officer—the municipality must pay for counsel. Our opinion is intended to clarify when that obligation exists, and whether it is to be satisfied by supplying municipally paid counsel in advance, regardless of the outcome of the case, or by reimbursing the officer for counsel fees after acquittal.

## I.

Plaintiffs in the case are Eude Moya, a former New Brunswick police officer, and his lawyer; defendant is the municipality.

In September 1975 the Middlesex County Prosecutor's Office initiated a confidential investigation into corruption within the New Brunswick Police Department. In December, the Department gained information implicating certain police officers in the theft of jewelry from a private residence. While being questioned, one of them gave a statement concerning additional crimes that he and other police officers had committed. In return for his statement, he was given immunity from prosecution for all crimes except the jewelry theft.

This officer stated that on September 1, 1975, he and another policeman, while on duty and in a police vehicle, acted as a lookout while Moya, who was off duty and in a civilian vehicle, and two other on-duty officers broke into a Sears store and placed television sets and other items in the trunk of Moya's car. The officer stated he received an alarm from the Sears store but did not respond until Moya had made his getaway. After making an official response to the alarm, he and two other officers canvassed the store and stole other items.

The officer also related statements made to him by another officer that the other, while on duty, and Moya, who was off duty, broke into a Great Eastern liquor store in March of 1975 and removed several large bottles of liquor. Other officers subsequently gave statements implicating Moya in various other breaking and enterings in exchange for dismissal of several charges.

On February 9 and 11, 1976, plaintiff Moya received letters from the Middlesex County Prosecutor's Office, accompanied by a Grand Jury subpoena, advising him that he was the target of investigations into alleged breaking and enterings of three New Brunswick retail establishments. The letters stated that the Grand Jury would be "inquiring into matters directly related to

the conduct of [his] office and touching upon the discharge of [his] duties as a police officer . . . ." The letters also advised Moya that it was his duty under the Public Immunity Act, *N.J.S.A.* 2A:81–17.2a1, "as a public employee, to appear and testify upon matters directly related to the conduct of [his] office, position or employment as a New Brunswick police officer . . . ." Moya was further advised that failure to testify would subject him to removal from office.

Plaintiff Moya then consulted his present attorney, Mr. Benedict, regarding representation. Benedict, aware that Moya was without funds, advised Moya that he would represent him if the City of New Brunswick agreed to pay his fee pursuant to *N.J.S.A.* 40A:14–155. That statute provides the following:

> Whenever a member or officer of a municipal police department or force is a defendant in any action or legal proceeding arising out of or incidental to the performance of his duties, the governing body of the municipality shall provide said member or officer with necessary means for the defense of such action or proceeding, but not for his defense in a disciplinary proceeding instituted against him by the municipality or in a criminal proceeding instituted as a result of a complaint on behalf of the municipality. If any such disciplinary or criminal proceeding instituted by or on complaint of the municipality shall be dismissed or finally determined in favor of the member or officer, he shall be reimbursed for the expense of his defense.

Benedict wrote the City Attorney asking whether New Brunswick would pay the legal fees and expenses connected with Moya's defense. The City Attorney replied on March 1, 1976, that the City Council had determined it was not obligated to pay for such legal fees and expenses because the conduct with which Moya was charged was outside the scope of his employment as a police officer. The letter also stated that Moya would be reimbursed for the expense of his defense only if the outcome of the criminal proceeding was determined in his favor. Upon receipt of the letter, Benedict agreed to represent Moya.

Moya was subsequently indicted by the Grand Jury and charged in three separate indictments with breaking and entering with intent to steal in violation of *N.J.S.A.* 2A:94–1, larceny of goods in excess of $500 in violation of *N.J.S.A.* 2A:119–2 and misconduct in office in violation of *N.J.S.A.* 2A:85–1. The

statements previously given by the other officers and their testimony before the Grand Jury served as the basis for the indictments. The indictments charged that Moya, while "acting under color of [his] office," provided assistance to breaking and enterings by other officers "in police uniforms, in police vehicles and while performing the duties for which [their] office was created."

During Moya's trial under two of the indictments, the officers, in accordance with their plea bargain arrangement, testified as to Moya's involvement in the alleged breaking and enterings. Their testimony was the only evidence offered against Moya. A jury found Moya not guilty of the first two charges. The third indictment was subsequently dismissed upon motion of the prosecutor, presumably because it was based on the charges of which Moya had been acquitted.

Following his acquittal, Moya requested reimbursement from the City for his legal fees. When the City refused, plaintiffs instituted this action. They claimed they were entitled to reimbursement under *N.J.S.A.* 40A:14–155, as the criminal charges arose out of or were incidental to Moya's duties as a police officer. They also claimed entitlement under the latter part of the statute, which requires reimbursement by the city where it initiates the charges and the proceedings are determined in favor of the accused. Finally, plaintiffs claimed defendant was estopped from denying liability based on the City Attorney's letter stating that Moya would be reimbursed if he were cleared of all charges.

The trial court held that plaintiffs were not entitled to reimbursement for legal fees and expenses under any of the above theories. The court, relying on the then recent case of *Valerius v. Newark,* 168 *N.J.Super.* 529 (App.Div.1979), later reversed, 84 *N.J.* 591 (1980), concluded that the criminal acts which Moya was charged with did not "by any stretch of the imagination" arise out of nor were they incidental to the performance of Moya's duties as a police officer. The court also held that liability could

not be based on the latter portion of the statute since the City of New Brunswick was not responsible for instituting the charges against Moya. Finally, the court held that the City Attorney's letter was not sufficient to bind the City and that Moya's attorney's reliance on it was not reasonable in view of the failure of the City Council to pass a resolution approving the payment. Plaintiffs appealed.

While plaintiffs' appeal was pending, we reversed the decision in *Valerius*. 84 *N.J.* at 591. Our construction there of *N.J.S.A.* 40A:14–155 led the Appellate Division in this case to reverse the trial court's denial of legal fees and costs. We now affirm the Appellate Division's judgment and remand to the trial court for a determination of the reasonable value of the services rendered by plaintiff Moya's attorney.

We agree with the Appellate Division that *Valerius* is dispositive of this matter. Our extended discussion of the statute and its interpretation is not required by any lack of analogy between the facts here and in *Valerius*, for it is quite strong. Rather, it arises from our desire to provide further guidance for those who must deal with this problem.

In *Valerius*, a police officer was charged with conspiring with another officer and two civilians to set up a scam in which the sale of drugs by the civilians would be interrupted by the two police just as the buyer-victim was handing the money over. Valerius and the other police officer would appear to make an arrest, confiscate the money, as well as the illegal drugs, all purportedly for the purpose of gathering up evidence to be turned over to the municipality. Neither the drugs nor the funds were turned over but were kept by the co-conspirators. After trial, at which Valerius testified, he was acquitted of all charges. We concluded that while the charges did not arise from the performance of Valerius's duties (we assumed that the jury verdict conclusively established that the incident had never

occurred since that was Valerius's defense), the charges never would have been made but for the fact that Valerius was a police officer. Since it was his status as a police officer that led to the charge, we concluded that he should be reimbursed for his counsel fees since it would be grossly unfair to do otherwise.

We recognized that our holding flew in the face of a statutory requirement that seemed to require provision of counsel at the outset of the case if at all.[1] We held that it was the kind of a case where the officer was entitled to counsel only if he was found innocent and that, obviously, the only remedy to effectuate such a rule would be reimbursement after the trial.

■ Here Moya was similarly acquitted. The record before us does not reveal the nature of Moya's defense. The charges against him, which we also conclusively assume were false, were presumably made primarily because he was a police officer. At the very least, it is fair to conclude his status was a substantial factor. Police corruption was being investigated, the misconduct of police was charged, all of the participants in the scheme of burglary were police, and many were in uniform and on duty at the time the burglaries were committed. The asserted conspiracy contemplated that the on-duty police officers would not respond to alarms triggered when other police officers, some of whom were also on duty, engaged in the burglaries. The only difference with the situation in *Valerius* is that Moya was not

---

[1]While the statute (*N.J.S.A.* 40A:14–155) in its present form strongly supports the conclusion that the only exception to the provision of counsel in advance occurs when the municipality brings the charge, the history of the statute would permit a different reading. That history shows that the language relied on by the Appellate Division in *Valerius* as clearly restricting the remedy to provision of counsel in advance (allowing reimbursement only upon acquittal of charges brought by the municipality) was added by an amendment intended to broaden, not restrict, the statute's coverage. *See L.* 1946, *c.* 67 (the original version of *N.J.S.A.* 40:11–19); *L.*1946, *c.* 103; *L.*1971, *c.* 197 (repealing *N.J.S.A.* 40:11–19 and enacting *N.J.S.A.* 40A:14–155); and *L.* 1972, *c.* 165 along with committee statement.

accused of wearing his uniform while he was participating in these alleged misdeeds.[2] Even without further analysis, reimbursement here seems required by the result in *Valerius*.[3]

We believe our apparent departure in *Valerius* from the literal terms of the governing statute requires further explanation to assure its proper application in the future. We noted that departure in *Valerius*. We noted further that the benefits of the statute would attach if the charges arose from the defendant's status as a police officer, as distinguished from charges arising out of the performance of police duties (although

---

[2]The wearing of a uniform, in fact or alleged, may be irrelevant. A careful reading of *Van Horn v. City of Trenton*, 80 *N.J.* 528 (1979), indicates that, while referred to by the Court, it played no part in the decision. *Id.* at 537. We assume the statute would cover an off-duty officer who effects an arrest and is charged with using excessive force, since it is the clearest case under the statute of charges arising from the "performance of his duties." We also assume that a police officer, off duty and out of uniform, who enters a store to investigate a burglary and is thereafter accused of stealing, would similarly be covered. If Valerius had been charged with having effected the arrest and confiscated the goods while out of uniform, coverage would have been forthcoming if the charges were proven false. The risks of suit exist whether the officer is in uniform or out; they arise not from what the officer is wearing but from the performance of duties or from the status of being a police officer. They are less often leveled against those out of uniform simply because they are not then usually called upon to act as a police officer. However, the status charge is not thus affected.

[3]While we noted in *Valerius* that Valerius testified that the chief witness's testimony against him may have been due to personal animus arising from his previous accusation that the witness's son had committed a crime, that formed no part of our decision in that matter. In other words we did not base our ruling on any conclusion that the charges against him stemmed from a prior case where indeed he *had* performed his duties and, because of that performance, had antagonized someone who brought false charges against him. That suggestion was simply Valerius's suspicion expressed on the stand and was not expressly determined by the jury or in any other proceeding. Our statement of the rule, 84 *N.J.* at 596–97, to the effect that "the charges against Valerius involved his status as a police officer," and similar statements make it clear that it was not the alleged prior incident that we were referring to, but rather the fact that the charges against him related to something a policeman allegedly did, as a policeman, and presumably would not have been leveled against him were he not a policeman.

our language suggested equating the two, *see* 84 *N.J.* at 596–97). Our reasoning was that the jury's verdict established that Valerius had not "engaged in conduct that constituted a perversion and prostitution of his duties," *id.* at 596, and therefore under the circumstances the charges "involved his status as a police officer." [4] *Id.* We concluded that "it would be the height of unfairness to hold that [he] must pay the legal expenses incurred in defending against [such] charges." *Id.* at 598.

We now have before us another slightly variant case which we believe calls for a fuller exposition of the underlying principles than was given in *Valerius.*

## II.

■ We conclude—as we did in *Valerius* —that the intended legislative coverage goes beyond a literal reading of the statute. The Legislature intended through this statute to "increase the morale of police departments," *Statement, Sen. Bill* 26 (1946), and to encourage the effective pursuit of police duties, *Van Horn v. City of Trenton,* 80 *N.J.* 528, 536–37 (1979), by providing counsel to police officers who are the subject of charges. The statute, however, will fall short of its goal if its effect is confined to the provision of counsel only where the charges arise from the performance of the officer's duties. Police performance and morale are damaged *whenever* an officer is required to pay counsel to respond to unfair charges because he is an officer, and unfair charges arise not only from performance of duties. They are sometimes made, and often without foundation, against someone, not because he or she did anything at all. but

---

[4]The full quotation is that "the charges against Valerius involved his status as a police officer and his use of that status in the alleged incident." As noted herein, we have concluded that reimbursement of counsel fees is required when the false charges arise out of the officer's status. It is not necessary that the charge itself involve the use of the officer's status. *See infra* at 511 n. 14.

solely and primarily because of his or her identity or status as a police officer.[5]

Charges attributable to status have the same common thread that runs through charges arising from the performance of the officer's duty. Both types of charge grow out of the unique vulnerability of a police officer attributable to that occupation. Exposure to false accusations is a special risk of the officer's calling. If the statute is to perform its mission, both types of charges should be covered and the police officer supplied with counsel or reimbursed for the cost, for matters of fairness, police

---

[5]The simplest example of a status charge is one made against a police officer because of a misidentification. For example, the defendant may be confused with the arresting officer who allegedly exerted excessive force, or a badge number may be misread. The more common unfounded status charge that can affect police performance and morale if counsel is not supplied is the baseless charge of police corruption, the kind of charge made against Valerius of which he was acquitted, and made here against Moya. Witnesses and investigators make errors, prosecutors sometimes reach unfounded conclusions, and the result on occasion is that charges are made either where no police corruption existed at all, or against some police who played no part in it. They may have done nothing but are charged simply because of their status as police, serving on a force that is the object of an investigation. More often, however, they are charged because the nature of their job, even apart from such investigations, makes them highly vulnerable to the risk of such charges.

Status charges may thus be closely related to the officer's performance of duty and may have a direct impact on that performance. For example, status charges of corruption may be leveled against an officer who regularly patrols a commercial section plagued by thefts which are the work of a police burglary ring. Or more generally, whenever money or property under the protection of a police officer disappears it may require but few circumstances to lead to such charges against him; and when drugs are sold on a corner, the officer on that beat is peculiarly susceptible to a status charge of complicity in narcotics trafficking—no matter what the officer does or does not do.

Such charges almost invariably result in legal expenses and if they are not reimbursed, police officers will naturally look for a safer way to do their job, a way that may make them less vulnerable to such charges and consequently, less effective as police. They may, in short, "temper [the] performance of [their] duties" in much the same manner as the officer charged with using

morale and performance are involved in both. In *Valerius* we decided that this legislative purpose could and should be fully accomplished despite the literal terms of the statute. We now reaffirm that conclusion.

As we note below (Point III), there are other reasons to extend this statute beyond its literal terms. Were the statute to be applied literally, the legislative purpose would be defeated even as to some charges against a police officer arising from an arrest situation, the charge universally understood to be the statute's objective, invariably covered by its protective provisions. Such charges require the advance provision of counsel under the statute even where the police officer is thereafter convicted of atrocious assault and battery on a victim who offered no resistance whatsoever and who was arrested illegally in bad faith. It is almost a contradiction in terms to describe this as a charge "arising out of or incidental to the performance of his duties," for indeed it arises solely from a crime, the very opposite of the performance of duties.

The test which should be used, therefore, to determine whether or not charges are covered by the statute is whether the charges are connected with the defendant's occupation as a police officer—either because they arise out of the performance of duties or out of the defendant's status as an officer.

Other considerations lead us to interpret the statute to require advance provision of counsel only in performance of duty cases while limiting police to reimbursement upon acquittal in status cases. The distinction does not rest on the extent to which one charge may reflect a perversion of duties, for either kind of charge (or the underlying facts) may have that quality. The distinction is explained by the difference in frequency with which the charges are made as well as the more direct impact on police performance of one as compared to the other. Charges

---

excessive force in connection with an arrest. *Van Horn v. City of Trenton, supra,* 80 *N.J.* at 537.

arising from performance of duties, such as the use of excessive force in connection with an arrest, are made much more often than those arising from status, such as corruption charges. Furthermore, their impact on police performance is invariably direct while false charges arising from status may sometimes have a somewhat tenuous relationship to performance, resulting from the effect on morale of the perceived unfairness of requiring an officer to pay counsel fees when the false charges are caused solely by his status as an officer.

The more likely the charge and the more direct its impact on police performance, the greater the need for certainty in providing counsel. We therefore conclude, as our prior cases imply, that excessive force and illegal arrest cases, the most frequently made charges, require advance provision of counsel.[6] So do practically all performance of duty cases. *But see infra* at 508. Charges of corruption, made less often, require reimbursement only upon acquittal in order to satisfy the statutory goal.[7]

### III.

As noted in *Valerius*, "the great majority of situations [covered by the statute are] where the officer, admittedly in the performance of constabulary duties, is charged with having used excessive force, made an illegal arrest, or otherwise exceeded his police authority." 84 *N.J.* at 599. Unless the explicit statutory exception applies (where the charges are brought by the munici-

---

[6]While we leave the question open, we note that logically the provision of counsel in such cases should be automatic, regardless of the variations in the allegations or in the underlying facts, and regardless of outcome.

[7]The statutory provision of counsel regardless of outcome in performance of duty cases may reflect a legislative determination that charges of that kind are most often groundless or more often groundless than other kinds of charges. Our interpretation of the statute conforms to an assumed legislative intention to confine the provision of counsel largely to unfounded charges, for reimbursement in status cases will occur *only* when the charges are unfounded.

pality, in which case the remedy is reimbursement and then only in the event of acquittal) the municipality is required to provide counsel, in advance, simply upon the basis of the charges themselves. The illegal arrest and excessive force charges fit into the rule that the Appellate Division in *Valerius* assumed would apply in all cases, namely that the statutory obligation is to be determined solely by looking at the statement of charges, usually in the indictment. 168 *N.J.Super.* at 533. As for such charges, that rule *does* achieve the legislative purpose by providing counsel in advance whenever the charges involve excessive force or illegal arrest.

That rule, with its automatic provision of counsel, suggests that the Legislature did not intend to limit the statutory protection by making it depend upon the degree of the excessiveness of force charged or proven, nor upon the clarity of the illegality of the arrest, charged or proven. Such refinements would tend to defeat what we believe was the main purpose of this legislation, namely, to free police from concerns about the cost of counsel in connection with arrests. The statute makes no such distinctions, and in requiring the provision of counsel in advance and regardless of the outcome of the suit, requires protection for police whose activities have actually been criminal in connection with effecting an arrest. If we are correct in this perception of the intended scope of coverage, it becomes clear that certain kinds of charges against the police are covered that have nothing to do with "the performance of [their] duties." [8]

---

[8] If the statute is to achieve its goal, the range of charges and underlying facts within its coverage may be quite wide. Charges suggesting the worst examples of excessive force may be made even though in fact no excessive force was used. Conversely, charges alleging, without more, that the force was "excessive" may include, without so stating, actual unprovoked assaults of the most serious quality. The defendant in both situations must be accorded the statute's benefit if it is to achieve its purpose. The statute is intended to free police acting in good faith from worries about lawsuits arising from arrests; the cost of achieving this goal is the coverage of those few officers whose actions may be completely indefensible.

The statute, therefore, has a purpose, which requires us to go beyond its literal provisions even in its most important and most common application. That purpose requires that the statutory coverage embrace not only some arrest charges outside its literal scope but status charges also.

## IV.

Police morale is no more affected by failure to supply counsel for police fairly accused of misconduct in effecting arrests than by such failure for police falsely accused of misconduct of other sorts. We have no doubt that the police force would regard it as "the height of unfairness," *Valerius, supra,* 84 *N.J.* at 598, if a

---

We note that in excessive force cases there are factors restraining police action more substantial than potential counsel fees. The police officer still faces the possibility of being held criminally or civilly liable. Unless there is an insurance or indemnity agreement covering such acts, it may be that in cases of excessive force involving deliberate and totally outrageous behavior, the police officer would be *solely* liable for any resulting damages. *See N.J.S.A.* 59:3–14 (public employee liable for full measure of recovery if his conduct outside the scope of employment or constituted a crime, actual fraud, actual malice or willful misconduct). In addition, an officer guilty of willful tortious conduct would be solely liable for any punitive or exemplary damages. *N.J.S.A.* 59:9–2(c); *Woodsum v. Pemberton,* 172 *N.J.Super.* 489, 520 (Law Div.1980); aff'd, 177 *N.J.Super.* 639 (App.Div.1981).

In many cases, presumably, any recovery against police would be covered by insurance or, if not, reimbursed by the municipality as a matter of policy. *Cf. N.J.S.A.* 59:10–1 *et seq.,* providing *State* employees with indemnification but excluding damages resulting from willful misconduct, *N.J.S.A.* 59:10–2, or the commission of a crime, *N.J.S.A.* 59:10–1. In *N.J.S.A.* 59:10–4, local public entities are encouraged and permitted, but not required, to indemnify their public employees. *N.J.S.A.* 40A:10–1 authorizes municipalities to obtain insurance against liability for its negligence and that of its officers, employees or servants. Therefore, in some cases, any recovery against police officers for acts or omissions committed in the scope of their employment would be covered by insurance, or if not, reimbursed by the municipality either as a matter of policy, or perhaps in discharge of their collective bargaining obligation to indemnify their agent. *See, e.g., Report, Attorney General's Task Force on Sovereign Immunity* 59–75 (1972); *Newark v. Hartford Acc. & Indem. Co.,* 134 *N.J.Super.* 537 (App.Div.1975); *City Council of Elizabeth v. Fumero,* 143 *N.J.Super.* 275 (Law Div.1976).

colleague, put to great expense in defending a different sort of misconduct charge (such as that charged against Moya) were denied reimbursement for counsel fees after being exonerated of the charges; and especially so when another, guilty of criminal assault in connection with an arrest, is provided with counsel free of cost at the commencement of the proceedings. Police must understandably strongly resent the imposition of substantial counsel fees on a colleague, unjustly accused of misconduct and acquitted, when, in their eyes—and in fact—his only crime was being a police officer.[9]

It is apparent from *Valerius* that we perceived the legislative purpose as not *exclusively* confined to "a concern that police officers might be discouraged from effectively pursuing their duties" or that police "would most certainly temper [their] performance of . . . duties," 84 *N.J.* at 597, citing *Van Horn v. City of Trenton*, 80 *N.J.* 528, 536–37 (1979), if provision of counsel were not assured upon the event of an accusation against the police arising from such performance. Unlike the officer about to make an arrest who may be concerned with—and therefore affected by—the possibility of suit and the provision of counsel, a police officer in a *Valerius*-type situation will sometimes have done nothing except be a police officer. There may be *no* duty involved whose performance would immediately be affected by any concern about the provision of counsel; there

---

[9]Implicit in the foregoing is our acceptance in this context of the jury's verdict of acquittal as conclusive proof of the officer's innocence. An acquittal does not generally foreclose the relitigation of intermediate or ultimate facts in subsequent civil or administrative proceedings. *See Helvering v. Mitchell*, 303 *U.S.* 391, 58 *S.Ct.* 630, 82 *L.Ed.* 917 (1937); *In re Pennica*, 36 *N.J.* 401 (1962); *Township of East Hanover v. Cuva*, 156 *N.J.Super.* 159, 163 (App.Div.1978); *Kugler v. Banner Pontiac-Buick, Opel, Inc.*, 120 *N.J.Super.* 572, 579–80 (Ch.Div.1972); *In re Darcy*, 114 *N.J.Super.* 454, 458 (App.Div. 1971); *Freudenreich v. Fairview Mayor, etc.*, 114 *N.J.L.* 290 (E. & A.1934). However, we do not believe such multiple litigation would serve the purposes of this statute, especially in view of its provisions requiring the municipality to supply counsel even when defendant is adjudicated guilty. Judges hearing applications for reimbursement pursuant to this opinion, therefore, shall accept as conclusive the verdict of acquittal.

may be no "momentary decision" involved that might be adversely affected by the "intrusion of this concern." *Van Horn, supra*, 80 *N.J.* at 537. Even such false charges of police misconduct, nevertheless, ultimately can have a similar impact on performance as arrest-related charges. The difference, of course, as noted above, is that such status charges are less frequent and their impact on performance diminished to that extent.

*Valerius*, in short, demonstrated that the statute was not confined to situations involving only the *direct* effect of the provision or non-provision of counsel on police performance. It embraced a wider range of situations that included charges where the officer, unjustly accused, had done nothing, as well as those arising from the performance of duties. It presaged cases, not yet before us, where the charge is directly *related* to performance of duty while not *arising* out of it, such as the false charge of corruption against the officer patrolling the commercial district.[10] It recognized that all of these charges can affect police performance and police morale and it implicitly decided that the extension of the statutory protection to police in all such cases was necessary to achieve the legislative purpose.

## V. .

We noted, *supra* at 502, that perversion of duties was not the basis for the distinction between status charges and per-

---

[10]In *Kauffman v. Borough of Glassboro*, 181 *N.J.Super.* 273 (1981), certif. den. —— *N.J.* —— (1982), the Appellate Division, basing its opinion on a reading of *Valerius* similar to the dissent herein, held that the charges of theft in that case were not covered by the statute. *Id.* 181 *N.J.Super.* at 276–77. The officer was charged with theft from a place of business he was assigned to patrol. If the charge in *Kauffman* was that the theft occurred while the officer was on duty (the record is not clear), it *would* be covered by the statute if the result was a verdict of acquittal. *See supra* at 501 n. 5. The result in *Kauffman*, however, was also based on a failure to give the municipality the opportunity to determine whether it should supply the officer with the "necessary means for ... defense." 181 *N.J.Super.* at 278.

formance of duty charges. Indeed, the factor of deviation from duty is no reliable guide in this area at all. The police officer who beats a victim offering no resistance whatsoever has perverted and prostituted his or her duties no less than one who enters a store to investigate a burglary and then commits a theft. If the Legislature intended advance provision of counsel in the arrest situation regardless of guilt, why then not in the theft case, sometimes similarly "arising from or incidental to the performance of his duties"? The answer, we suggest, lies not in any essential difference in the quality of the acts as deviations from proper performance of duties, but in the experience that teaches us that charges of the latter kind occur much less frequently and therefore may require a different kind of protection for police from the former.

The foregoing analysis is the implicit basis and justification for our result in *Valerius.* That case established that there need be no fact whatsoever involving the performance of duties in order for the statute to apply but that the false charges themselves (as shown by the jury verdict) are sufficient. Our present analysis of that case further establishes that "perversion and prostitution of duties" is not a satisfactory test to determine the statute's applicability.

## VI.

Charges of stealing property after entering a store to investigate a burglary are sometimes no different in nature from excessive force cases. If it is admitted that there was such a lawful entry by police for such purpose, it is not really a "status case" at all but a "performance of duty" case. Yet we would not require automatic provision of counsel because we perceive the frequency of risk of such charges as being substantially less than the excessive force charge. In such cases, therefore, courts should withhold determination of any issue concerning the applicability of the statute until the matter is

concluded, and then reimburse only if defendant is acquitted (or, in civil litigation, if defendant prevails).[11]

Similarly, when the charge is that the initial entry was not in the performance of duties, but rather that it was, as here, part of a conspiracy on the part of police to burglarize, we have a true "status" charge—a charge that, if false, most likely was made against defendant because of being a police officer. The risk of this charge is "incidental" to one's status as a police officer. Here, in addition to avoiding any direct impact on police performance, the statutory purpose is to avoid the perceived unfairness of requiring innocent police to pay legal fees for groundless charges made against them because of their status as police. If they are found guilty, there is no such perceived unfairness and therefore no effect on morale. The statutory purpose is served by providing for reimbursement of counsel fees only upon acquittal.[12]

---

[11]The extra blows knowingly struck by an arresting officer on a person already completely subdued do not differ significantly for this purpose from the theft committed by the officer investigating a burglary. While the use of excessive force may be more common, both occurrences are examples of yielding to a human impulse, an impulse that arose·from the performance of duty, and both are totally contrary to the obligations of police.

[12]The lesser impact on performance and morale where charges are instituted by the municipality tends to explain the statute's special treatment of that situation. Where charges are brought by or instituted on behalf of the municipality, the municipality is not required to provide counsel but must reimburse the officer only if the proceedings are dismissed or finally determined in the officer's favor.

The risk that police will be unfairly accused of misconduct by their employing municipality either in the performance of their duties or arising from their status as police officers is smaller than where the charges are based on allegations by others. A municipality is most reluctant to charge its officers with misconduct, since the reputation of the municipality, as well as its entire police force, is often adversely affected, even if unfairly, whenever a police officer is charged with a crime. In addition, a municipality is acutely aware of the adverse impact that the institution of unsupported charges against police officers would have on their morale, and the consequent impact on their performance.

## VII.

While there may be situations which do not neatly fall into the foregoing categories, they provide, we believe, sufficient guidance to dispose of most cases when application of the statute is at issue.[13]

If we are to achieve the legislative purpose of improving police morale and performance, police should know that as to the more common charges they will invariably be provided with counsel at the outset of the matter, and that even as to the rather infrequent charge arising solely from the police officer's

---

For these reasons, it can be fairly said that in most cases a municipality will bring charges against an officer only after making a reasoned judgment based on a careful investigation. Because police officers' confidence in their employing municipality's judgment is greater and because a municipality has a good idea of what charges will affect performance and morale, it can be presumed that police are less affected where the municipality institutes the charges. This being the case, the statutory requirement is limited to reimbursement after acquittal, just as in cases of false charges of corruption where the potential impact on performance is not as great as it is in arrest charges.

[13]There is no easy test to determine whether a charge arises out of an officer's status. Each case requires a consideration of the particular circumstances giving rise to the particular charge. A mere allegation that a charge has been lodged because of status is insufficient. In order to establish that a "status" charge exists, there must be a showing of the relationship between the charge and the defendant's position as a police officer. Thus, a person arrested in the course of committing a breaking and entering with other civilian co-conspirators, who is later discovered to be a police officer, would not be within the scope of the statute. An officer who is misidentified as the one who burglarized a store based on physical characteristics alone without any relationship to the suspect's occupation would not be within the statute because the misidentification was not related in any manner to any status as a police officer. Similarly, a police officer who becomes involved in an altercation with a neighbor over property lines and out of personal hatred or animosity commits an assault on that neighbor, would not receive the benefit of counsel fees, whether acquitted or not.

status, the cost of counsel will be supplied if the charge is unfounded.[14]

We affirm the Appellate Division's judgment. The matter is remanded to the trial court to determine the reasonable value of the services rendered by Moya's attorney.[15]

---

[14]The dissent would limit *Valerius* to false charges of "improper use" of the officer's status. Presumably if Moya had been falsely charged with entering in uniform as if to investigate a burglary, the dissent would allow reimbursement of his counsel fees. Similarly, had Valerius been falsely charged with participating in the scam in that case while out of uniform, he might *not* have been entitled to counsel fees. It seems obvious that the legislative purpose will not be served if reimbursement depends on what the false charges are. Their variety of specific false content is unpredictable, perhaps irrational, and, since unrelated to anything but human error, irrelevant. The legislative purpose requires, rather, that reimbursement depend on whether the false charges were made because the defendant was a police officer, *i.e.*, whether they arose out of his or her status. If they did, then it would be "the height of unfairness," *Valerius, supra,* 84 *N.J.* at 598, to require the officer to bear the expense of counsel. That unfairness is compounded by the dissent when it requires, in effect, not simply that the charges be false, not simply that they were made because defendant was a police officer, but that they specifically allege, falsely, the *improper use* of that status. When two police officers are equally falsely charged with participating in a police burglary ring, it will be difficult to explain to the police force that one is entitled to counsel fees because the *false* charge against him was that he pretended, while in uniform, to be investigating a burglary, while denying fees to the other, who entered the premises at the same time, because the *false* charge against him was that he entered *out* of uniform to steal.

[15]In *Valerius*, we concluded that in "status" cases, the officer should notify the municipality of the charges so it may determine whether it wants to provide counsel in advance or whether it will reimburse the officer only upon acquittal. If the latter, the officer may obtain private counsel and be reimbursed for counsel fees upon exoneration. 84 *N.J.* at 598.

The procedure followed by plaintiffs here does not present any objections. The record shows that the City of New Brunswick as a matter of practice did not provide counsel to police officers charged with an offense arising out of the performance of their duties but rather negotiated fees with an attorney of the officer's own choosing. In accordance with this practice, Moya's attorney wrote a letter to the City requesting that it accept responsibility for the fees in Moya's defense. We need not determine whether the City Attorney's response that the City would reimburse Moya only if he were acquitted constituted an estoppel, for even if the City had unequivocally denied responsibility for

PASHMAN, J., concurring.

I join the Court's result in this case primarily because I believe that it follows from our holding in *Valerius v. Newark*, 84 *N.J.* 591 (1980). Like both the plurality and the dissent, I believe that so recent a decision should not be quickly reversed unless it was clearly wrong. However, our difficulty today in finding a plausible rationale for *Valerius* shows the need to reconsider the reasoning in that case. I write today because I believe the plurality opinion, intended to clarify the *Valerius* rule and facilitate its application to future cases, will have precisely the opposite result. Further, in my view, the plurality misreads the *Valerius* rationale, misconstrues the intent of the Legislature in passing *N.J.S.A.* 40A:14–155, and establishes rules that are illogical and contrary to the statute's purposes.

The first problem with the plurality opinion is that it misreads our opinion in *Valerius.* I agree with the dissent on that score. Having said that, however, I must add that I agree with the plurality that the reasoning in *Valerius* needs reevaluation in light of the present case. In some respects, the reasoning I would endorse in its stead resembles that offered by the plurality. However, I would state more forthrightly that we are rewriting *Valerius.* More importantly, I disagree with the rules the plurality draws from its reevaluation of *Valerius* for the future application of *N.J.S.A.* 40A:14–155.

I therefore offer my own attempt to put *Valerius* on more solid ground. Applying *Valerius* thus redrawn, I would hold, as does the plurality, that Moya was entitled to reimbursement for counsel upon his acquittal. I therefore join the plurality's result.

Valerius was indicted for conspiring with another officer and two civilians to set up a phony drug purchase. The State

---

counsel, Moya at that point had the right under *Valerius* to retain private counsel and obtain reimbursement from the municipality upon acquittal.

charged that two civilians pretended to sell drugs to persons unaware of the scheme, only to have the sale interrupted by Valerius and his partner. Allegedly, the officers pretended to arrest their civilian co-conspirators and confiscated the drugs and purchase money, dividing the money among themselves.

After his acquittal, Valerius sought reimbursement by the municipality for his counsel fees pursuant to *N.J.S.A.* 40A:14–155. That statute most clearly applies to cases in which an officer is accused of having performed his duties in some improper fashion, such as using excessive force in an arrest. In *Valerius*, we extended the scope of the statute. We concluded that the charges against Valerius "involved his status as a police officer and his use of that status in the alleged incident." 84 *N.J.* at 596. They were therefore charges "arising out of or incidental to the performance of his duties," *N.J.S.A.* 40A:14–155, and that the municipality therefore had a duty to pay for his counsel. 84 *N.J.* at 596–97.

We further held that Valerius was entitled to counsel only upon acquittal. The wording of the statute, providing for counsel whenever an officer "is a defendant," suggests that counsel is to be provided at the outset of the proceedings regardless of the outcome. We concluded, however, that if Valerius had been guilty as charged, his conduct would have "constituted a perversion and prostitution of his duties," *id.* at 596, and hence the charges could not be said to have arisen from the performance of his duties.

The plurality here thoroughly rewrites *Valerius*. Finding a passage in the legislative history of *N.J.S.A.* 40A:14–155 to the effect that the statute was designed to "increase the morale of police departments," *see ante* at 500, the plurality construes the statute to provide counsel whenever doing so would augment police morale. It therefore concludes that counsel should be provided whenever charges are brought primarily because of the police officer's status as a member of the police. The plurality distinguishes between "performance" cases in which

the officer is charged with wrongdoing in the performance of his duties and "status" cases in which the charges are a result of the officer's status. In the latter situation, counsel is provided only after acquittal. This disparate treatment is justified by the contention that performance cases arise more frequently and hence are more damaging to police morale.

The problems with this approach are many. First, none of it can be found in the *Valerius* opinion. There is no mention of police morale, of charges brought because of the officer's status, or of the frequency with which various charges are brought. In *Valerius* an officer was *charged with misusing his status*, which is subtly but significantly different from being *charged because of his status.*

Second, the plurality places far too much emphasis on police morale as the motivating force for the statute. The chances are strong that the reference was mere boilerplate. More likely, as we explained in *Van Horn v. City of Trenton*, 80 *N.J.* 528, 536–37 (1979), quoted by the dissent, *post* at 519, the statutory purpose was to address a legislative concern that

> police officers might be discouraged from effectively pursuing their duties if they were forced to provide their own defense against civil actions and criminal charges brought by disgruntled victims of law enforcement. Police officers, by the very nature of their duties, are exposed to a substantial risk that such civil or criminal actions will be initiated, regardless of their merits. The possibility of having to incur legal expenses to answer for one's conduct as a police officer would most certainly temper one's performance of police duties. We are convinced that the Legislature, by enacting *N.J.S.A.* 40A:14-155, was obviously attempting to minimize the intrusion of this concern into the momentary decisions which police officers are continually required to make. [citations omitted]

Secondarily, the Legislature may have been concerned with the unfairness of forcing police officers to pay for counsel to defend against charges which can be said to be occupational hazards of police work.

Even if morale was a serious legislative concern, the statute should not be expanded to encompass every situation in which payment for counsel would improve morale. Statutes almost never are designed to do everything that might accomplish their

goals. This is certainly true where the goal is as general and wide-ranging as improving police morale. Competing considerations arise. The terms of the statute reflect the extent to which its purposes were intended to be effectuated.

The plurality's rule that the frequency of the charges should determine whether counsel is provided before trial further confuses matters. The statute says nothing about providing counsel based on the frequency of the charge, and the unfairness and difficulty in administering such a rule are evident. More importantly, there is no need to devise a test to determine when counsel should be provided in status cases. Counsel can be provided only upon acquittal in status cases since, as explained below, there is no way to know that the charges were a result of the officer's status until the officer is acquitted.

Despite my disagreement with the plurality opinion, I agree that our reasoning in *Valerius* needs reconsideration. This is clear from the facts of this case. The charges against Moya alleged a robbery scheme in which off-duty, out-of-uniform officers conspired with on-duty officers to rob Sears. The on-duty officers allegedly received the alarm from Sears, but did not answer it until they and the off-duty officers had completed the crime. Clearly, the charges against the on-duty officers involved use of their status as officers, since their response to the alarm ensured that no other police would interrupt their activities. Under *Valerius*, they would therefore be entitled to reimbursement for counsel.

As the dissent points out, however, Moya and the other off-duty officer were not alleged to have made any particular use of their status as officers. They were charged with a "garden variety," *post* at 520, breaking and entering. Under the rationale of *Valerius*, Moya would not be reimbursed even upon his acquittal. Any rule, however, that provided counsel to only some members of this alleged conspiracy of police officers would be completely arbitrary. The lack of rational basis for treating them differently is particularly striking because, by

virtue of Moya's acquittal, we presume that he was not involved in the incident at all. Thus, the allegations could just as well have placed Moya as one of the on-duty officers. I agree in this regard with footnote 14 of the plurality opinion. *Ante* at 511.

The facts in this case demonstrate that the rationale provided in *Valerius* leads to untenable results. I agree with the plurality that we should therefore reevaluate our reasoning there. This is the way case law should develop. Rules are re-thought and more finely honed as we learn with experience. A better rationale that I believe was implicit in *Valerius* is that counsel should be provided for charges brought against a police officer primarily because he is a police officer. This is roughly the rule devised by the plurality, but I do not reach it by the same path and I do not pretend it is the rule we established in *Valerius*.

In *Valerius*, the complainant's charges may have stemmed from the fact that in the course of his duties, Valerius had accused the complainant's son of committing a crime. Police officers are often subject to charges of criminality in revenge for their police work. Here, the charges arose directly from an investigation of police corruption. Because of the special importance society places on honesty in its police forces, special investigations of this nature are frequent. Erroneous charges are an inevitable result. Further examples of the vulnerability of police to inaccurate charges are imaginable, as the plurality notes. *Ante* at 501, n.5. Stated succinctly, false charges of this type are an occupational hazard for police officers.

I would construe *N.J.S.A.* 40A:14–155 to offer some protection against that hazard by providing reimbursement for the police officer's counsel whenever the officer is acquitted of charges brought primarily as a result of his status as an officer. Such charges, viewed as an occupational hazard, can fairly be seen as "incidental to the performance of [police] duties." *N.J.S.A.* 40A:14–155. Further, the fear of facing such "status" charges could discourage officers from effectively pursuing their duties.

*See Van Horn v. City of Trenton,* 80 *N.J.* at 536–37. Police may fear to bring charges against one who threatens to file a criminal complaint against them in revenge. Police officers may hesitate to investigate police corruption for fear of being implicated themselves. Although the charges are groundless, counsel may be necessary for those charged to establish innocence. Basic fairness suggests reimbursement for an occupational hazard.

As we held in *Valerius,* in "status" cases not concerning improper performance of duties, counsel is provided only after the resolution of the charges, and only if the officer is acquitted. The reason is simple. If the officer is found guilty, the charges were brought not because of the officer's status, but because the officer was corrupt. Stated otherwise, criminality is not an occupational hazard of being a police officer; false charges are. The plurality also reaches this result, but I do not accept its argument that status cases are treated differently from performance of duty cases because of the supposedly lesser frequency with which status charges are brought.

There are good reasons for granting more extensive reimbursement for counsel in performance cases. First, performance cases are most clearly covered by the statute, and the statute clearly intended provision of counsel in advance in such cases.

Second, there is a conceptual distinction between the two cases. In a performance case, the officer is indisputably working for the goals of the police force. The wrongdoing is overzealousness in the performance of duty. The means may be improper, but the goal is proper. Thus, in performance cases, the charges can be considered an occupational hazard even if they are proven true. Except in the extraordinary case, the law presumes that officers charged with using excessive force in effecting an arrest merely intended to do their job. By contrast, in status cases, the goal itself is illegal, a perversion of an officer's job.

I would not conclude, as the plurality suggests in *dictum*, that counsel is to be provided at the outset even when the complaint alleges egregious and manifestly excessive use of force in making an arrest, or where a clearly illegal arrest is made. Such action cannot be considered the performance of police duties. It is more akin to a perversion of those duties. Thus, if forced to reach the issue, I would hold that when the alleged misconduct exceeds simple over-zealousness, and is such that the officer *must have known* of its illegality, the case should be treated as a status case for which counsel is provided only upon acquittal.

In sum, I join the plurality's result. I agree that the municipality should reimburse for counsel whenever a police officer is charged with an offense primarily because of his status as an officer, but only upon his acquittal of those charges. Accordingly, I join their conclusion that Moya is entitled to reimbursement. However, as explained above, I differ significantly from the reasoning by which the plurality reaches that result.

CLIFFORD, J., dissenting.

In tendering this modest dissent I do not subject the pertinent statute to any exhaustive analysis that would envelop every conceivable fact situation. The web we have thus far woven for ourselves in this troublesome area is tangled quite enough.

Plaintiff Moya was a police officer of the City of New Brunswick. He was charged with multiple counts of what I view as garden-variety breaking, entering, and larceny. He was exonerated. Moya and his lawyers seek to recover from the City the legal fees and costs of the successful defense. The statute providing for a municipality's furnishing the "necessary means for defense," *N.J.S.A.* 40A:14–155, requires that the action in which the officer is a defendant be one "arising out of or incidental to the performance of his duties * * *." I consider the criminal prosecution against Moya to be of a type not contemplated by that statutory language.

*Van Horn v. City of Trenton,* 80 *N.J.* 528 (1979), adverts to the apparent purpose of *N.J.S.A.* 40A:14–155, namely, to address a legislative concern that

> police officers might be discouraged from effectively pursuing their duties if they were forced to provide their own defense against civil actions and criminal charges brought by disgruntled "victims" of law enforcement. Police officers, by the very nature of their duties, are exposed to a substantial risk that such civil or criminal actions will be initiated, regardless of their merits. The possibility of having to incur legal expenses to answer for *one's conduct* as a *police officer* would most certainly temper one's performance of police duties. We are convinced that the Legislature, by enacting *N.J.S.A.* 40A:14–155, was obviously attempting to minimize the intrusion of this concern into the momentary decisions which police officers are continually required to make. [Id. at 536–37 (citations omitted) (emphasis supplied).]

In *Valerius v. Newark,* 84 *N.J.* 591 (1980), this Court festooned *Van Horn's* straightforward approach. The *Valerius* facts are set forth in the opinion of today's majority, *ante* at 497–498:

> In *Valerius,* a police officer was charged with conspiring to set up a scam with a fellow officer and two civilians whereby the sale of drugs by the civilians would be interrupted by the two police just as the buyer-victim handed over the money. Valerius and the other police officer would appear to make the arrest, confiscate the money and the illegal drugs, all purportedly for the purpose of gathering up evidence to be turned over to the municipality. However, the drugs and the funds ultimately were kept by the co-conspirators. After trial Valerius was acquitted of all charges.

The *Valerius* Court pointed out that the charges against Valerius involved his status as a police officer and his *improper use of that status* in the alleged incident; that if those charges were true, Valerius's conduct amounted to a "perversion and prostitution of his duties and responsibilities as a police officer"; that a conviction would have established that his conduct neither arose out of nor was incidental to the performance of his duties; but that inasmuch as Valerius was acquitted, the municipality had no basis for concluding that he had engaged in conduct that constituted a perversion and prostitution of his police obligations. 84 *N.J.* at 596. Then comes the embellishment on *Van Horn* :

> Since the charges in the indictment alleged *improper use of his status as a police officer* and, since the jury, after the development of the underlying facts at trial,

rejected the truth of the charges, the matter would be included within the statutory language "arising out of or incidental to the performance of his duties." [*Id.* at 596–97 (emphasis added).]

As I understand *Valerius*—and understood it when I cast my vote with the unanimous Court—in order to determine whether criminal proceedings against a police officer arise out of or are incidental to the performance of his duties as contemplated by *N.J.S.A.* 40A:14–155, courts look to whether the charges involved the officer's police status and his *use* of that status, and whether the action against him resulted in his being exonerated. Given Moya's acquittal, the last is not in issue here.

Let us backtrack a bit. *Van Horn* perceived that the statute was designed to protect police officers from the risk of incurring legal expenses in defending themselves against civil or criminal action initiated by the disgruntled "victims" of their law enforcement activities. 80 *N.J.* at 536–37. So did *Valerius.* 84 *N.J.* at 597. But in no sense did Moya become subject to criminal prosecution because of any risk to which his status as a police officer exposed him—lest it be the risk of being victimized by "rogue cops," which hardly appears to have been the legislature's concern. Moya was swept up in an official investigation, whereas *Van Horn* and *Valerius* instruct us that the legislature focused on an entirely different sort of problem: its uneasiness originated in the confrontations police have with the general public arising out of their conduct as police officers—with maintaining law and order. See *Meyerson v. City of Bayonne,* 185 *N.J.Super.* 437 (App.Div.1982).

Plainly, the charges against Moya did not spring from any asserted use of his status as a law enforcement officer. He was accused of acting, while off duty, in concert with certain on-duty officers. His *status* was not alleged to have been used. Perhaps his "know-how" and information were, but those are nothing more than the tools-of-the-trade of any sophisticated breaker and enterer. That circumstance is what leads me to the conclusion that the charge here was of the garden variety. I would not rewrite the statute to cover it.

I vote to reverse and enter judgment for defendant.

SCHREIBER and POLLOCK, JJ., join in this opinion.

PASHMAN, J., concurring in the result.

*For affirmance and remandment* —Chief Justice WILENTZ and Justices PASHMAN, HANDLER and O'HERN—4.

*For reversal* —Justices CLIFFORD, SCHREIBER and POL-LOCK—3.